### ELDER v. NEW YORK CENT. R. CO.

No. 10020.

Circuit Court of Appeals, Sixth Circuit.

Dec. 3, 1945.

362

John W. Cowell, of Cincinnati, Ohio (Blakely & Blakely, of Covington, Ky., on the brief), for appellant.

Lewis Levy, of Cincinnati, Ohio (Henry B. Street, Charles P. Stewart, Galvin, Tracy, Geoghegan, Levy & Milliken, and Harmon, Colston, Goldsmith & Hoadly, all of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The appellant, Richard Elder, sought unsuccessfully in the district court to recover from the appellee railroad company $6,360 in wages lost by him in consequence of its refusal to reinstate him as clerk, from which position he was furloughed by the company when its office personnel was reduced on April 1, 1936. He contends that the railroad company had no right to dismiss him, without cause and without his consent, through a bargaining agreement entered into between the company and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, of which he was not a member. He concedes, however, that the labor organization was the duly authorized bargaining agent of all freight office employees of the railroad company.

The question to be answered is whether, in the circumstances of the case, the employee has been deprived *unlawfully* of a legally constituted "seniority right."

On April 14, 1924, appellant became a rate revision clerk, at Cincinnati, Ohio, in the office of the auditor of freight accounts of the "Big Four" railroad company, a subsidiary of appellee. He worked continuously in that capacity until February 1, 1930, when the Big Four was leased to the New York Central, which thereafter operated the leased line. He then entered the service of the latter, performed the same duties as clerk, and continued to work in the Cincinnati office until August, 1931, when he was transferred to the New York Central's office of local freight accounts at Detroit, Michigan, in pursuance of an agreement entered into between that railroad and the Brotherhood consequent upon mediation proceedings before the Railway Labor Board.

Throughout the full period of Elder's employment by each of the railroad companies, the Brotherhood has been the collective bargaining agent for their clerical employees. As declared by the district court, such rights as appellant has to seniority "flow from and exist solely by virtue of the agreement or agreements, as modified at various times, made between the defendant and the Brotherhood."

A controversy arose concerning the rights of clerks employed by the several roads affected in the reorganization and consolidation of the various offices in the New York Central System. Mediation, pursuant to the Railway Labor Act, resulted in the execution of an agreement, dated October 4, 1928, between the Brotherhood and the railroads involved, determining the rights of all employees represented by the union labor organization. Certain offices were to be suspended and new offices created to take over the duties and functions of discontinued offices. The number of new positions available in the newly

created offices was stated, and proration of these positions among the clerks was provided for. The names and seniority dates of employees were to appear on the roster of the new or consolidated office. Express provision was made that: "Employees from other system lines accepting positions in the new or consolidated office will relinquish their rights on their home road." The clerical staff, including appellant, in the office of the auditor of freight accounts of the Big Four continued to operate under agreement between that railroad and the Brotherhood until October 1, 1931, at which time the reorganization was completed. The office at Cincinnati, Ohio, was then abolished and two accounting offices were set up by the New York Central to take over the auditing and accounting of freight charges for the various railroads. One of these offices was to be located at Detroit, Michigan, and the other at Cleveland, Ohio. The Detroit office was to be entitled the office of the Auditor of Local Freight Accounts, and the Cleveland office was to be known as the office of the Auditor of Interline Freight Accounts. Each was to be a separate, distinct and independent office from the other, constituting a separate seniority district with a seniority roster containing only the names of those employed in it. There were to be no interchangeable seniority rights between the two offices.

The appellant employee was assigned to and accepted employment in the office of the Auditor of Local Freight Accounts at Detroit, Michigan, and worked there continuously for approximately five years, until he was furloughed on April 1, 1936, because of a reduction in the office force.

The district court found that under the mediation agreement when appellant accepted employment in the Detroit office, his only right of seniority was in that office; that he lost all seniority rights with the Big Four; but that his seniority status, instead of beginning at the time he entered the Detroit office, dated back to April 14, 1924, when he entered the service of the Big Four.

While appellant was on furlough, the New York Central again consolidated the work of its accounting forces. The plan of the railroad company to this end caused a controversy between it and the Brotherhood which was settled by an agreement in writing, dated March 19, 1937. This agreement provided for the establishment of a consolidated office at Detroit, to take over the functions and duties formerly performed in five offices, which were abolished. The five offices put out of existence and merged into the new Detroit office were those of three departmental accounting offices located, respectively, at Cleveland, Indianapolis, and Detroit, the office of the Auditor of Interline Freight Accounts at Cleveland, and the office of Auditor of Local Freight Accounts at Detroit.

Though, under the terms of the agreement of March 19, 1937, between the New York Central and the Brotherhood, provision was made for as many employees as possible, there were insufficient positions in the new office to take care of the employees in all the offices affected. All *active employees* in the Interline Freight Accounts office at Cleveland and those in the Local Freight Accounts Office at Detroit, who desired employment in the new office, were given positions therein. Because he was not actively employed, the appellant was not included in the list. The positions and rate of pay of the retained employees were provided for in the agreement.

Immediately after the establishment of the new office at Detroit, a seniority roster was published. Neither this roster nor any subsequent one included the name of appellant. The district court found as a fact that the intent of the agreement of March 19, 1937, was that only those employees in the office of the Auditor of Local Freight Accounts, Detroit, "who were at the time of the establishment of the consolidated office employed and working in the Detroit office were to be given positions in the new office."

No question concerning the construction of the 1937 agreement arose until 1939; whereupon, the Brotherhood and the appellee railroad company entered into a written interpretation of their previous agreement confirming their original understanding as to the intent and meaning of the agreement of March 19, 1937. This interpretation was signed for the New York Central by its Auditor of Freight Accounts, and for the Brotherhood by a Protective Committee of five and by its General Chairman. The interpretative document reads as follows: "Memorandum of Understanding Relative to Furloughed Employees, Office of Auditor of Freight Accounts, Detroit, Michigan. At the time of the consolidation of the office of Auditor

364

Interline Freight Accounts and Auditor Local Freight Accounts, July 1, 1937, it was agreed between the Auditor of Freight Accounts and the protective committee of the clerks' organization representing the employees of the consolidated office of Auditor of Freight Accounts, that the seniority roster of employees as composed directly after the consolidation will be maintained with the full understanding that any employee who might have been laid off in reduction of force prior to the consolidation in either of the offices to be consolidated, will no longer be considered as employees of the New York Central Railroad Company. This agreement is hereby reconfirmed effective as of July 1, 1937."

In the last finding of fact of the district court, it was asserted that the 1937 agreement between the Brotherhood and the New York Central was not discriminatory against appellant, but affected all employees of the railroad company in the offices involved in the consolidation; and "was not entered into in bad faith or in fraud of the plaintiff's rights, but for the general welfare and benefit of all the employees employed by defendant who were represented by the Brotherhood."

. The petition of Richard Elder was dismissed at his cost and final judgment entered in favor of the New York Central Railroad Company upon stated conclusions of law drawn by the district judge from the facts found. The court concluded that, under the agreements between the Brotherhood and the railroad company, appellant had seniority rights in no other office than that of the Auditor of Local Freight Accounts at Detroit. This office was abolished and a new one created, namely: the office of Auditor of Freight Accounts, in which, under the terms and according to the intent and purpose of the March 19, 1937, agreement, Elder had no seniority rights.

It was concluded also that the railroad company and the Brotherhood had the right, without violation of the lawful rights of Elder, to modify the agreement of March 19, 1937, and especially to interpret its meaning; and that "the written interpretation made in 1939 is binding upon the plaintiff and all other employees of the defendant represented by the Brotherhood."

The conclusion was stated that this interpretation "confirms and reaffirms" the intent of the original agreement, under which appellant had no seniority rights in the office of the Auditor of Freight Accounts. As a further conclusion, the district court reiterated, in substance, its last numbered finding of fact to which reference has been made.

The findings of fact of the district court, all supported by substantial evidence, could not be reasonably considered clearly erroneous. Therefore, we accept them. The court's conclusions of law are soundly rationalized; and, in our judgment, are correct.

The seniority right of the man who toils, indoors or out, in a shop or in an office, is a most valuable economic security, of which he may not be unlawfully deprived. The right, however, is not inherent. It must stem either from a statute or a lawful administrative regulation made pursuant thereto, or from a contract between employer and employee, or from a collective bargaining agreement between employees and their employer. In the absence of statute, mere employment independent of the contractual conferring of special benefits upon those who have longest service records with the individual employer, creates no rights of seniority in retention in service or in reemployment. In the instant case, the appellant rests upon no right created by statute, but solely upon a collective bargaining agreement, made between the chosen representative of the workers and the employer. The fact that he was not a member of the union labor organization which lawfully bargained for him and for all other employees of the company neither strengthens nor weakens his position. His individual seniority rights were both created and limited by the bargain which was made for and was binding upon all employees for whom it was made. See Norfolk & W. R. Co. v. Harris, 260 Ky. 132, 136, 84 S.W.2d 69, and cases there cited; Cannon v. Brotherhood of Railroad Trainmen, 262 Ky. 113, 89 S.W.2d 620.

As was pointed out in System Federation No. 59 of Railway Employees Department of American Federation of Labor v. Louisiana & A. R. Co., 5 Cir., 119 F.2d 509, 515, the authorities are uniform to the effect that collective bargaining agreements do not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract beyond its life, when it has been terminated in accordance with its provisions.

The law of Michigan is important, if not, indeed, controlling; inasmuch as Elder was employed in Michigan, his services were to be performed there, the agreement between the Brotherhood and the New York Central was made and to be performed in that state; and, if the contract was breached as to Elder the breach occurred in Michigan. In Hartley v. Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees, 283 Mich. 201, 206, 207, 277 N.W. 885, a married woman, by long service, had acquired seniority rights under an agreement between her employer railroad company and the same labor union which made the collective bargaining agreement with which we are concerned in the instant case. Her employment was terminated by the company in consequence of the action of the bargaining agent in requiring dismissal of married female employees.

She brought an action for damages against the Brotherhood on the theory that the labor organization, having created her seniority rights by an earlier agreement, "could not subsequently enter into another agreement whereby such rights were altered or ceased to exist." A judgment of no cause of action was affirmed. The State Supreme Court said: "The seniority rights acquired by her did not arise by virtue of her contract of employment with her employer, but existed by reason of the agreement of 1921 between the railway and the brotherhood. Ryan v. [New York Cent.] Railroad Co., 267 Mich. 202, 255 N.W. 365. This agreement was executed for the benefit of all the members of the brotherhood and not for the individual benefit of plaintiff. When, by reason of changed economic circumstances, it became apparent that the earlier agreement should be modified in the general interest of all members of the brotherhood it was within the power of the latter to do so, notwithstanding the result thereof to plaintiff. The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all the members." Compare Coley et al. v. Atlantic Coastline, etc., 221 N.C. 66, 19 S.E.2d 124.

Appellant places much dependence upon Piercy v. Louisville & N. R. Co., 198 Ky. 477, 482, 248 S.W. 1042, 1045, 33 A.L.R. 322. That case is quite distinguishable, in that, there, no attempt was made, as here, to modify a collective bargaining agreement affecting employees generally. The court merely protected the seniority right of a railway conductor to a desirable run established by contract between the company and the employees' union in which the conductor held membership. The opinion stated: "The action taken by the company at the instance of the Order of Railroad Conductors merely affects this run and the assignment of conductors thereon, and does not appear to have been considered either by the company or the Order of Railroad Conductors as being a general change or modification of the contract."

Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, cited by appellant, does not support his position; for, there, the right asserted by the petitioner to a remedy for breach of the statutory duty of the bargaining representative to represent and act for the members of a craft, without discrimination because of race, rested upon the Federal Constitution and a statute of the United States.

The judgment of the district court is affirmed.