### LEWELLYN v. FLEMING et al.
#### No. 3229.

Circuit Court of Appeals, Tenth Circuit.

March 14, 1946.

Rehearing Denied April 10, 1946.

---

John L. Goode and Marke Goode, both of Shawnee, Okl., for appellant.

W. R. Bleakmore and James E. Grigsby, both of Oklahoma City, Okl., for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant, a railroad trainman, prosecutes this appeal from a judgment of the District Court denying recovery in a suit against his employer, the Railroad Company, to recover the value of an employment contract, alleged to be the difference between a railroad conductor and brakeman's salary for the period of his life expectancy, or $8,000. Federal jurisdiction is based upon admitted diversity of citizenship and requisite amount in controversy.

According to the agreed facts, appellant was first employed by the C. R. I. & P. Railroad Company in 1917 as a brakeman, and assigned to the "pool freight service" on that portion of the railroad between Shawnee and El Reno, Oklahoma. At that time, it was the custom and understanding, acted upon by both parties, that each employee in the "pool freight service" in the Shawnee-El Reno district would and did acquire seniority rights superior to the rights of employees in the same service in other districts between Booneville,

Arkansas and Sayre, Oklahoma. Appellant has continuously worked for the Railroad Company in the Shawnee-El Reno district, and in 1926 was promoted to a conductor, in which capacity he has served at times, but for the most part his work has been that of a brakeman.

In September 1942, an additional crew was established on the railroad between Shawnee and El Reno known as the "Sixth Crew or Turn." At that time, appellant was the oldest man in seniority in the "pool freight service" in that district, and under the custom and understanding prevailing at the time of his employment, would have been entitled to serve as conductor of this crew and draw a conductor's salary. However, pursuant to the provisions of the Railway Labor Act, 44 Stat. 577, as amended 48 Stat. 1185, 45 U.S.C.A. 151 et seq., and in February 1938, the Railroad Company entered into a contract with the Order of Railway Conductors, as the exclusive bargaining agent of the craft or class of railway conductors, under the terms of which all new pool turns or vacancies were opened to seniority bids by all trainmen in the "pool freight service" between Booneville, Arkansas and Sayre, Oklahoma. The effect of this contract was to abrogate appellant's pre-existing seniority rights, and to deny him the right to serve as conductor on the "Sixth Crew or Turn."

Appellant contends that his seniority rights acquired under his employment contract are vested, valuable property rights; that he has never been a member of the Brotherhood; never consented to the contract which deprived him of his seniority rights, and his suit is based upon the premise that the Railway Labor Act does not authorize the abrogation of his vested rights by a contract between the Brotherhood and his employer, and could not constitutionally do so under the Fifth Amendment.

The trial court concluded that the agreement between the Railroad Company and the Brotherhood was made pursuant to a basic Congressional policy, and superseded the prior individual contract of employment between the appellant and the Railroad Company, leaving appellant without cause of action. Judgment was entered accordingly.

One of the prime purposes of the Railway Labor Act is "to avoid any interruption to commerce or to the operation of any carrier engaged therein" growing out of any dispute between the carrier and his employees. To that end it is declared to be the duty of all carriers and their employees "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions." Sec. 2, First. The Act provides that employees shall have the right to organize and bargain collectively through representatives of their own free choice; the majority of any craft or class of employees have the right to determine who shall be the bargaining representative of such craft or class for purposes of the Act; provided, that no employee shall be prohibited from "individually * * * conferring with management." Sec. 2, Fourth. The carrier is required by the Act to bargain exclusively with the chosen representative of the craft (Sec. 2, Second, Sixth, Eighth, Tenth), and minority members thereof "cannot bargain individually on behalf of themselves as to matters which are properly the subject of collective bargaining," whether affiliated with the bargaining agent or not. Steele v. L. & N. R. Co., 323 U.S. 192, 200, 65 S.Ct. 226, 231, and cases cited. Here the Order of Railway Conductors was the statutory bargaining agent, and as such was authorized to enter into a contract with the Railroad Company concerning wages, hours and conditions of employment, and this undoubtedly included the authority to prospectively contract with reference to seniority rights of the members of the craft, whether members of the union or not. This is not an individual grievance which falls outside the collective interest of the craft, and therefore outside of the scope of the collective bargaining authority of the statutory representative. Cf. Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282.

The Act clothes the bargaining representative with "powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents." In the exercise of its legislative functions, the statutory representative is charged with the public interest contemplated by the purposes of the Act, and is constitutionally bound to protect equally the interests of the members of the craft it is authorized to represent. But the duty to act fairly and non-discriminatorily does not bar the statutory representative "from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations

in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority * * * are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit." Steele v. Louisville & N. R. Co., supra, 323 U.S. at page 202, 203, 65 S.Ct. at page 232.

■■■ Congress was undoubtedly free to enact the Railway Labor Act in the exercise of its commerce powers, and the policy expressed therein cannot be thwarted or hindered by contracts between private parties. Louisville & N. R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671. Private contracts relating to matters affecting interstate commerce are necessarily made in contemplation of transcendent Congressional power to regulate all matters and activities in commerce or affecting commerce. And such contracts, when validly made, can be enforced only in a manner not to conflict with the expressed Congressional policy. Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann.Cas. 560; L. & N. R. Co. v. Mottley, supra; Norman v. Baltimore & O. R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352. Not all individual contracts are affected by the Railway Labor Act, see Williams v. Jacksonville Terminal Co., 315 U.S. 386, 398, 62 S.Ct. 659, 86 L.Ed. 914, but private contracts which relate to collective bargaining rights between the railroad and employee "may [not] be used to forestall bargaining or to limit or condition the terms of the collective agreement." J. I. Case Co. v. N.L.R.B., 321 U.S. 332, 64 S.Ct. 576, 580, 88 L.Ed. 762; Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 347, 64 S.Ct. 582, 88 L.Ed. 788.

■■ In our case, the collective agreement was prospective in its effect. It had been executed and governed the rights of the parties when seniority rights under appellant's private contract first operated to entitle him to the cunductor's position and salary. Unlike the Steele case, supra, there is a total lack of a showing of discrimination on this record between appellant and any other member of his craft or class. As far as we know, the trainman who succeeded to the new conductor's position under the collective agreement may have also been a nonunion member, or occupied some other minority status. The appellant has no constitutional right to insist upon the observance of a private contract, the effect of which is to deny the incidence of a contract entered into in furtherance of an expressed Congressional policy, which the Congress is free to adopt.

The judgment is affirmed.