**T. E. GOODIN, Sr., et al.**

v.

**CLINCHFIELD RAILROAD COMPANY,**
**Blue Ridge Lodge No. 816 of Brotherhood of Railroad Trainmen, et al.**

**Civ. A. No. 891.**

United States District Court
E. D. Tennessee, Northeastern Division.

Oct. 21, 1954.

John D. Goodin, Johnson City, Tenn., Ferdinand Powell, Jr., Knoxville, Tenn., for plaintiffs.

A. K. McIntyre, Gen. Sol., Clinchfield R. Co., Erwin, Tenn., Tucker & Erwin, Erwin, Tenn., John S. McLellan, Kingsport, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This is a suit by five employees of the Clinchfield Railroad Company, a railroad operated by Atlantic Coast Line Railroad Company and Louisville and Nashville Railroad Company, under lease, against said railroad and Blue Ridge Lodge No. 816 of Brotherhood of Railroad Trainmen, a labor organization authorized to act as the exclusive bargaining agent of the employees of the Railroad Company under the Railway Labor Act, certain officials of the Labor Union, and a number of individuals who are members of the Union. Each plaintiff is seventy years of age, or older. Since the filing of the suit, plaintiff Prince has retired from the railroad service and is no longer an active party in the suit.

For convenience, Clinchfield Railroad Company will sometimes be referred to hereafter as the Railroad, Blue Ridge Lodge No. 816 of Brotherhood of Railroad Trainmen as the Union, and plaintiffs as Employees.

The Railroad and the Union amended their existing collective bargaining contract entered into pursuant to the terms of the Railway Labor Act, as amended, 45 U.S.C.A. § 151 et seq., by providing for the compulsory retirement of any employee covered by such contract upon attaining the age of seventy. This amendment was executed by the parties on February 1, 1954.

The Employees ask for a declaratory judgment that the compulsory retirement provision of the February 1, 1954 amendment to the bargaining agreement is illegal, void and unenforceable. The amendment to the complaint prays that an injunction issue against the defendant restraining the execution of the compulsory retirement provision.

The suit was filed under the Declaratory Judgments Act, 28 U.S.C. § 2201. Jurisdiction of this court was based on the Railway Labor Act, 45 U.S.C.A. § 151 et seq., also Title 28 U.S.C. § 1331, which gives the district courts jurisdiction when the matter exceeds three thousand dollars and arises under the constitution, laws or treaties of the United States, and Title 28 U.S.C. § 1337, which gives district courts jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce.

An agreed order was entered in the case on March 22, 1954, restraining the defendants from changing the status quo of any of the plaintiffs as same existed at the time of the commencement of the suit as a result of the agreement between the Railroad and the Union dated February 1, 1954, until the entry of a judgment in the case.

Plaintiffs in their complaint as amended contend that the compulsory retirement provision in the amended agreement is invalid for a number of reasons. The reasons assigned for the alleged invalidity of the contract are set forth in detail in the complaint as amended and will be referred to later.

The Railroad Company and the Union in their separate answers assert that the compulsory retirement provision was made in good faith after extended negotiations between the Railroad and the Union, and that it is a valid provision. The Railroad and the Union have filed motions for summary judgment, asserting in each motion that the complaint as amended fails to state a claim upon which relief can be granted.

At the request of plaintiffs, a hearing was recently held on the motion for summary judgment, at which time plaintiffs Goodin, Norris and Fink testified orally in support of the factual allegations of the complaint as amended. Also, Mr. Goforth, Secretary of the Union, testified after being called by plaintiffs' counsel for cross-examination. A number of stipulations were made by the parties

during the hearing so that there is no dispute between the parties on any material fact necessary to a decision on the motions. The determinative question is a legal one, namely, whether the Railroad and the Union had the legal right to amend their bargaining agreement made pursuant to the Railway Labor Act so as to provide for compulsory retirement of all their conductors and trainmen who reached the age of seventy years.

The pleadings, stipulations, and oral proof, insofar as material to a decision on the motions, present the following facts: The main offices of the defendant are located in the town of Erwin, Tennessee, where plaintiffs live. The defendant Railroad was formed in 1923, and has continued to exist as a partnership or union of interests consisting of Atlantic Coast Line Railroad Company, a Virginia corporation, and Louisville and Nashville Railroad Company, a Kentucky corporation, for the purpose of and engaged in leasing as lessee from Carolina, Clinchfield and Ohio Railroad Company, a Virginia and South Carolina corporation, as owner and lessor, and operates from Elkhorn City, Kentucky, to Spartanburg, South Carolina, through the states of Kentucky, Virginia, Tennessee, North and South Carolina. The Railroad was constructed about the year 1906 by Carolina, Clinchfield and Ohio Railroad Company, and by it operated until it was leased to the defendant, Clinchfield Company, who in 1923 leased it under long term lease to the Atlantic Coast Line Railroad Company and Louisville and Nashville Railroad Company. The first bargaining agreement was made by defendants' predecessors in 1910. Other collective bargaining agreements were made in 1922 and 1948. A practice was established under these agreements not to discharge without cause any conductor or trainman so long as he was able to work. Plaintiffs say that they have relied upon this practice throughout the period of their long service with the Railroad. On February 14, 1953, the Union first discussed a compulsory retirement provision.

There are approximately forty-three active conductors and one hundred five active trainmen who are members of the defendant Union. Approximately forty-three members of the defendant Union are either retired or furloughed. Plaintiff Taylor is the only member of the defendant Union. He, along with the other three plaintiffs, are also members of the Order of the Railroad Conductors Union. The compulsory retirement provision was first discussed by the members of the defendant Union on February 14, 1953, at which time members of the other lodges were present, including trainmen and conductors of the Southern Railway Company. The Union has two meetings each month and the compulsory retirement question was discussed at each meeting until October 9, 1953, at which time it was voted to issue to its members ballots on the question of whether or not the members desired to enter into an agreement with the Railroad setting up a compulsory retirement age of seventy. At this time ballots were issued to the non-members of the Union but their votes were not counted. They were considered by the Union as advisory only. On November 2, each plaintiff wrote a letter to the Railroad stating in substance that he considered the action of the Union to retire all conductors and trainmen at age seventy as arbitrary and illegal. The letters also stated that there were no restrictions upon the terms of employment except capability and physical condition. The non-members stated that they would not agree to the compulsory provision. Plaintiff Taylor also joined in this protest. A majority of the votes cast in the October referendum favored the establishment of a compulsory retirement agreement. On November 27, 1953, the defendant Union issued ballots in a second election to close December 1, 1953, upon the compulsory retirement proposition. These ballots were also issued to the non-members of the Union whose votes were counted. On November 27, 1953, plaintiffs, through their counsel, wrote Mr. Goforth, secretary of the defendant Union, that any attempted execution by the Union and

the Railroad of the compulsory retirement provision would be illegal for the reasons set forth in the letter. Plaintiffs in this letter protested a vote on the question and stated in substance that they were not waiving any of their rights to challenge the action of the Union and the Railroad on permitting a referendum on the proposed compulsory retirement agreement. The election was held and a substantial majority of the votes cast were in favor of the compulsory retirement provision. Following the election meetings were held between the representatives of the Union and representatives of the Railroad which resulted in the conclusion of an agreement on February 1, 1954, that established compulsory retirement for all employees represented by the Brotherhood of Railroad Trainmen and in the employ of the Railroad Company at age seventy.

The question for decision is whether the compulsory retirement agreement between the Union and the Railroad is valid. Plaintiffs contend that the compulsory retirement agreement is invalid because the Railway Labor Act does not confer upon the Union as a statutory representative of the Employees and the Railroad the right to make a compulsory retirement agreement. The identical question was decided adversely to the contention of plaintiffs by District Judge William J. Campbell on December 11, 1951, in an unpublished opinion, a copy of which was filed as Exhibit "A" to the Union's brief, in the case of Boget v. Chicago & North Western Railroad Co.; Chicago & North Western Railroad Company, counterclaimant and third-party plaintiff v. Boget, counterdefendants, and Brotherhood of Locomotive Engineers, third-party defendants, No. 51C 902, D.C.N.D.Ill., E.Div., the pertinent portion of which is as follows:

"I will now pass to the second question presented by the pending motions:

" 'Does the Railway Labor Act authorize a collective bargaining agreement fixing a compulsory retirement age?'

"Section 2 First of the Railway Labor Act states: 'It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions. * * *'

"Section 2 Fourth provides: 'Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purpose of this chapter. * * *'

"The Railway Labor Act does not, by its terms, define the permissive scope of bargaining agreements except by the use of the phrase, 'rates of pay, rules, and working conditions.' It becomes necessary, therefore, to determine whether an agreement for a compulsory retirement age falls within the purview of any one of such terms. A similar problem confronted the Court of Appeals of this Circuit in the case of Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 12 A.L.R.2d 240, decided in 1949, in which a certiorari was denied by the Supreme Court, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112. The Court of Appeals there upheld a decision of the National Labor Relations Board, requiring an employer subject to the National Labor Relations Act [29 U.S.C.A. § 151 et seq.] to bargain collectively with respect to retirement age.

"The Court stated:

" 'We are unable to differentiate between the conceded right of a union to bargain concerning a discharge, and particularly a nondiscriminatory discharge, of an employee and its right to bargain concerning the age at which he is

compelled to retire. In either case, the employee loses his job at the command of the employer; in either case, the effect upon the "conditions" of the person's employment is that the employment is terminated, and we think, in either case, the affected employee is entitled under the Act to bargain collectively through his duly selected representative, concerning such termination. * * * The Company's position that the age of retirement is not a matter for bargaining leads to the incongruous result that a proper bargaining matter is presented if an employee is suddenly discharged on the day before he reaches the age of 65, but the next day, when he is subject to compulsory retirement, his union is without right to bargain concerning such retirement.

" ' * * * a termination by discharge is concededly a matter for collective bargaining. To say that termination by retirement is not amendable to the same process could not, in our judgment, be supported by logic, reason or common sense. * * *

" 'The Company also concedes that seniority is a proper matter for collective bargaining * * *. What would be the purpose of protecting senior employees against lay-off when an employer could arbitrarily and unilaterally place the compulsory retirement age at any level which might suit its purpose? * * * Again we note that discharges and seniority rights, like a retirement and pension plan, are specifically mentioned in the bargaining requirements of the Act.'

"The reasoning of the Court of Appeals in the Inland Steel case compels the conclusion that compulsory retirement is a proper subject for collective bargaining under the Railway Labor Act. That Act and the National Labor Relations Act both have a long history of identical construction in the matters protecting the right to organize and bargain collectively. The United States Supreme Court frequently refers to cases under the two Acts interchangeably, and relies on cases under one Act for construction of the other.

"It should be further remembered that unless the plaintiffs rely on a collective bargaining agreement for their tenure of employment, they would have no standing to sue in any instance, for the reason that the employer could discharge them all."

■ Plaintiffs' contention that the compulsory retirement agreement is discriminatory as to the minority group of the Railroad's employees, particularly as to plaintiffs, was also decided adversely to their contention by Judge Campbell in his opinion in the above referred to Boget case, the pertinent portion of which is as follows:

"We now come to the third question at issue.

"Is a collective bargaining agreement, wherein a compulsory retirement age is fixed, discriminatory?

"What has been said in the paragraphs disposing of the preceding issue, should adequately dispose of this issue. However, in addition, it should be noted that compulsory retirement is not discriminatory in the sense that it affects only certain employees and not others. The compulsory retirement age of seventy years affects all employees alike in its ultimate results, since all employees, who live and remain with the carrier long enough, will some day reach the retirement age and will be obliged to leave their employment. True, some will feel its effectiveness immediately, whereas others will not feel its touch until some future, but ascertainable, time. That fact, however, does not militate against its present universal applicability."

The question was made by the employees in the Boget case that the Railroad Retirement Act prohibited or lim-

ited the right of the Railroad and the Union to fix a compulsory retirement age. Plaintiffs have not made this question in the present suit. The portion of the opinion in the Boget case dealing with this question is as follows:

"Passing to the fourth and final question at issue.

"'Does the Railroad Retirement Act prohibit or limit the right of a carrier and a collective bargaining representative to fix a compulsory retirement age?'

"The Railroad Retirement Age does not purport to establish the age at which employees shall or may retire. Plaintiffs predicate their instant action primarily upon Section 2(c) of the Act, which privides:

"'An annuity shall begin to accrue as of a date to be specified in a written application (to be made in such manner and form as may be prescribed by the Board and to be signed by the individual entitled thereto), but—

"(1) Not before the date following the last day of compensated service of the applicant, and

"(2) Not more than sixty days before the filing of the application.'

"The Retirement Act is clearly limited to the subject of the terms and conditions under which an employee shall be entitled to an annuity. The Act merely fixes the age sixty-five as the age at which a male employee becomes entitled to an annuity, assuming he meets the other qualifications. The Act encourages retirement at the age of sixty-five, for it prevents an employee from using, in computing the amount of his annuity, any service rendered 'after the end of the calendar year in which the individual attains the age of sixty-five.'

"Sec. 3(b) (4). The Section relied upon by plaintiffs does not cover an 'application for retirement,' or establish any single method of accomplishing retirement. It simply provides that one of the conditions of getting an annuity is signing a written application for an annuity in a manner and form as prescribed by the Railroad Retirement Board."

In the court's opinion, the reasoning of Judge Campbell in the Boget case is sound and the conclusions drawn by him are acceptable as decisive of the principal issues in this case.

▪ Plaintiffs contend that Congress is without power to authorize bargaining agreements between representatives of Employees and the Railroad containing compulsory retirement provisions. It has been held that authorization for collective bargaining is within congressional power under the commerce clause. Accordingly, authorization of collective bargaining agreements is constitutional. Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. However, the bargaining agreement itself must not be used as a weapon against minorities so as to deprive them of civil or constitutional rights. Wallace Corp. v. N. L. R. B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216; Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173.

No individual has a constitutional right to be employed by another. Individuals may enter into a contract of employment, and if they do so, contract rights arise which have some constitutional protection. But there is no constitutional prohibition against the breaking of a contract, and if one is broken the aggrieved party has his cause of action for damages. In employment relations it would be an action for wrongful discharge. Plaintiffs have no contractual or vested right to be employed by the Railroad. If they had individual contracts of employment and were wrongfully discharged by the defendant Railroad they could have sued for wrongful discharge, but they are not suing for wrongful discharge. The record indicates that they do not have individual contracts with the defendant Railroad, as will more fully appear hereafter.

What contract rights plaintiffs have are based on the collective agreement with the Company and will continue so long as the collective agreement is in force. If the collective agreement falls the right falls with it. There is no constitutional right to have particular employment relations perpetuated through perpetual renewals of the collective agreement.

If the collective agreement between the Union and the Railroad is invalid for any or all of the asserted reasons, it falls and plaintiffs Union or collective security falls with it. If the Railroad through Union contract surrenders its right to terminate plaintiffs' employment at an age of its own choosing and accepts seventy as the termination age, this is no more than an implied agreement by the Railroad to continue the employment of conductors and trainmen until they reach seventy before terminating because of age. Without the contract the employer could terminate them at any time. A collective bargaining agreement upon age seventy as the termination age is not an abridgment of any right of the employees but only an abridgment of the employer's right.

■ If the collective bargaining agreement in this case was devised as a means of penalizing them individually because of their individual or group activities it would be an unlawful discrimination. Wallace Corp. v. N. L. R. B., 323 U.S. 248, 65 S.Ct. 238. This, however, is not the situation. Plaintiffs rely mainly on denial or abrogation of their seniority rights as the basis for alleging invalidity of the collective agreement. Seniority, as affecting promotions, lay-offs, and similar eventualities, does not arise from statutes or constitutional mandate, but has its origin in collective bargaining itself. No vested right, therefore, exists in perpetuation of seniority rules. As they arise from collective bargaining, they can be modified by collective bargaining. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; Lewellyn v. Fleming, 10 Cir., 154 F.2d 211; Elder v. New York Central Railway Co., 6 Cir., 152 F.2d 361.

■ Modification, as is true of original bargaining, may not be used as a weapon of punishment or of depriving employees of their civil or constitutional rights. Rolax v. Atlantic Coast Line Railway Co., 4 Cir., 186 F.2d 473.

■ Modification of seniority rules is not invalid though its effect is involuntary retirement of employees at an age fixed by collective bargaining. Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 12 A.L.R.2d 240; certiorari denied, 336 U.S. 960, 69 S.Ct. 887.

Plaintiffs in support of their contention that Congress does not have the power under the constitution to authorize employees and railroads to enforce agreements providing for compulsory retirement at certain ages, cite the case of Railroad Retirement Board v. Alton Railroad Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468. In that case the court held that the act establishing a compulsory retirement and pension system for all carriers subject to the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., was violative of the due process clause of the Fifth Amendment in that, among other things, it undertook to take the private property of some of the carriers and transfer it to others without compensation, where the object of the transfer was to build up the transferee or to pension its employees. Numerous other reasons were stated by the court why the Act violated the due process clause. That case is not controlling of the present case.

■ Another constitutional objection offered to the Act by the plaintiffs is that it has delegated to the Labor Union the power to enforce compulsory retirement on adults solely because of age without establishing any standard or test to be followed by the Labor Union in the exercise of this power. As heretofore indicated, Section 2 of the Railway Labor Act makes it the duty of the railroad and employees to make and maintain

agreements regarding "rates of pay, rules, and working conditions". The main purpose of the Act is to have the railroads and employees to settle all of the disputes in order to avoid any interruption to commerce growing out of any dispute. It was for Congress to choose the means by which its objective of securing the uninterrupted service of United States railroads was to be secured, and its judgment expressed in the Railway Labor Act is not open to review in the courts. Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592. In Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 686, the court said:

> "Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such matters as the unit within which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees".

The railroad industry is vitally concerned with the safety of the public. The court is unable to say that the retirement provision of seventy years is not directly related to the safety of the public.

■ Plaintiffs also contend that the compulsory retirement agreement violates the attainder clause, Article I, Section 9, Clause 3, of the Constitution, which provides "No Bill of Attainder or ex post facto Law shall be passed." Another constitutional objection is that it denies plaintiffs due process in violation of the Fifth Amendment, which provides in part: "No person shall be * * * deprived of life, liberty, or property, without due process of law". As heretofore observed, plaintiffs have no property right in continued employment, except as derived from contract, in this case contract meaning the collective bargaining agreement, which further means that they have no property right at all, hence due process is not involved.

Plaintiff Goodin claims that he has a private contract with the defendant Railroad which was made in 1908. At that time one of the predecessors of defendant Railroad was the South and Western Railroad Company. Mr. Cables was the Vice-President and General Manager of South and Western Railroad. He left in 1912. In 1908, plaintiff Goodin met Mr. Cables while Goodin was conductor on a work train. The railroad was laying track at that time. Goodin was second in seniority. Cables brought over a man by the name of Wiley from another railroad as conductor and made him second in seniority. A man by the name of Hall came over and circulated a petition to make himself third in seniority. Goodin testified that at that time he asked Cables if he was going to bring additional men over from other railroads and make them his senior. Cables told him that he was the third man in seniority and that he would remain third in seniority. This is the basis of the claim of plaintiff Goodin that he has an individual contract with the Railroad to continue his work in perpetuity so long as he is capable of performing the duties of conductor. Plaintiff Goodin and the other three plaintiffs also claim that it has been the custom of the Railroad Company throughout the years that it would not discharge anyone without a hearing and without cause so long as he was able to perform the duties as an employee. The record shows, however, that this custom stemmed from the bargaining agreements which have been in effect since the first bargaining agreement was made with the Union in 1910.

There is no proof in the record that Cables had authority from the Board of Directors of the Railroad Company to enter into the contract that plaintiff Goodin claims he entered into with him in 1908.

■ As construed and applied by the courts, collective bargaining under the Railway Labor Act and similar acts supersedes individual contracts between employers and employees. Order of Rail-

road Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788; J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762.

 Any practice or custom practiced by the railroad in the past to not discharge any employee without a hearing and without cause could have been changed by a valid bargaining agreement between the Railroad and the bargaining agency under the Railway Labor Act, which was done by the agreement of February 1, 1954.

We now revert to the contention of plaintiffs that the agreement violates the attainder clause of the constitution. In Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, at page 722, 71 S.Ct. 909, at page 913, 95 L.Ed. 1317, the court said:

"Bills of attainder are 'legislative acts * * * that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial * * *.' United States v. Lovett, 1946, 328 U.S. 303, 315, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252. Punishment is a prerequisite. See concurring opinion in Lovett, supra, 328 U.S. at pages 318, 324, 66 S.Ct. [1073] at pages 1080, 1083. Whether legislative action curtailing a privilege previously enjoyed amounts to punishment depends upon 'the circumstances attending and the causes of the deprivation.' Cummings v. State of Missouri, 1867, 4 Wall. 277, 320, 18 L.Ed. 356. We are unable to conclude that punishment is imposed by a general regulation which merely provides standards of qualification and eligibility for employment.

"Cummings v. State of Missouri, 1867, 4 Wall. 277, 18 L.Ed. 356, and Ex parte Garland, 1867, 4 Wall. 333, 18 L.Ed. 366, the leading cases in this Court applying the federal constitutional prohibitions against bills of attainder, recognized that the guarantees against such legislation were not intended to preclude legislative definition of standards of qualification for public or professional employment. Carefully distinguishing an instance of legislative 'infliction of punishment' from the exercise of 'the power of Congress to prescribe qualifications,' the Court said in Garland's case: 'The legislature may undoubtedly prescribe qualifications for the office, to which he must conform, as it may, where it has exclusive jurisdiction, prescribe qualifications for the pursuit of any of the ordinary avocations of life.' 4 Wall. at pages 379–380, 18 L.Ed. 366. See also, Cummings v. State of Missouri, supra, 4 Wall. at pages 318–319, 18 L.Ed. 356. This doctrine was reaffirmed in Dent v. State of West Virginia, 1889, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623, in which Mr. Justice Field, who had written the Cummings and Garland opinions, wrote for a unanimous Court upholding a statute elevating standards of qualification to practice medicine. And in Hawker v. People of State of New York, 1898, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002, the Court upheld a statute forbidding the practice of medicine by any person who had been convicted of a felony. Both Dent and Hawker distinguished the Cummings and Garland cases as inapplicable when the legislature establishes reasonable qualifications for a vocational pursuit with the necessary effect of disqualifying some persons presently engaged in it."

The Court observed in the Lovett case, 328 U.S. 303, 66 S.Ct. 1073, the statute "did not declare general and prospectively operative standards of qualification and eligibility for public employment. Rather, by its terms it prohibited any further payment of compensation to named individual employees." The statute there "was held to have imposed penalties without judicial trial."

Frankfurter, J., concurring in part and dissenting in part, said:

"The Constitution does not guarantee public employment. City, State and Nation are not confined to making provisions appropriate for securing competent professional discharge of the functions pertaining to diverse governmental jobs. * * * "

Quotations above related to an ordinance which operated to exclude Communists from city jobs. In American Communications Ass'n, C. I. O., v. Douds, 339 U.S. 382, at page 413, 70 S.Ct. 674, at page 691, 94 L.Ed. 925, the court in upholding the Communist-oath provision, sec. 9(h) of the National Labor Relations Act said:

"The unions' argument as to bill of attainder cites the familiar cases, United States v. Lovett, 1946, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252; Ex parte Garland, 1867, 4 Wall. 333, 18 L.Ed. 366; Cummings v. State of Missouri, 1867, 4 Wall. 277, 18 L.Ed. 356. Those cases and this also, according to the argument, involve the proscription of certain occupations to a group classified according to belief and loyalty. But there is a decisive distinction: in the previous decisions the individuals involved were in fact being punished for past actions; whereas in this case they are subject to possible loss of position only because there is substantial ground for the congressional judgment that their beliefs and loyalties will be transformed into *future* conduct. * * * Here the intention is to forestall future dangerous acts; there is no one who may not by a voluntary alteration of the loyalties which impel him to action, become eligible to sign the affidavit. We cannot conclude that this section is a bill of attainder."

United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, held to be a bill of attainder, hence unconstitutional, an act of congress which cut off the compensation of three named individuals, congress having found them guilty of disloyal conduct. At page 315 of 328 U.S., at page 1078 of 66 S.Ct., the court said:

"In Cummings v. State of Missouri, 4 Wall. 277, 323, 18 L.Ed. 356, this Court said, 'A bill of attainder is a legislative act which inflicts punishment without a judicial trial. * * * Neither of these cases [Cummings and Ex parte Garland] has ever been overruled. They stand for the proposition that legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution. Adherence to this principle requires invalidation of Section 304. We do adhere to it.

"Section 304 was designed to apply to particular individuals. Just as the statute in the two cases mentioned it 'operates as a legislative decree of perpetual exclusion' from a chosen vocation. [Ex parte Garland, supra, 4 Wall. at page 377, 18 L.Ed. 366.] This permanent proscription from any opportunity to serve the Government is punishment, and of a most severe type. It is a type of punishment which Congress has only invoked for special types of odious and dangerous crimes, such as treason, 18 U.S.C. § 2; acceptance of bribes by members of Congress, 18 U.S.C. §§ 199, 202, 203; or by other government officials, 18 U.S.C. § 207; and interference with elections by Army and Navy officers, 18 U.S.C. § 58.

"Section 304, thus, clearly accomplishes the punishment of named individuals without a judicial trial. The fact that the punishment is inflicted through the instrumentality of an Act specifically cutting off the pay of certain named individuals found guilty of disloyalty, makes it no less galling or effective than if it

had been done by an Act which designated the conduct as criminal."

It is not alleged here that the Railway Labor Act contravenes the attainder clause, but that the violation is in the collective agreement. The foregoing quotations on the subject of attainder indicate conclusively that attainder applies to punishment. In order to sustain their attainder argument, plaintiffs would have to show that the collective agreement was designed to operate against them as named persons, or as persons easily ascertainable and intended to be penalized. That, however, is not the ground on which they advance the attainder contention, but on the ground that the company and the union have entered into a collective agreement by which they have adopted the age of seventy as the age of compulsory retirement. For all that appears, it is a provision that will apply to every conductor of the railroad when and if he reaches the age of seventy. By any of the tests above defined and discussed by the Supreme Court, that sort of contract provision is not a bill of attainder.

Plaintiffs further contend that the Union violated the duty owed to them as their bargaining agent to represent them as members of a minority group of employees in a fair, impartial, and good faith manner. In support of this contention plaintiffs say that the Union failed to invite them to their meetings and to hear their views on the question of compulsory retirement. It is true that plaintiffs were not invited to the Union meetings to discuss compulsory retirement provisions.

In the case of Steele v. Louisville & Nashville Railroad Company, 323 U.S. 192, 65 S.Ct. 226, the court, after stating the duties of a bargaining agent to represent the minority group in good faith, further stated that wherever necessary to that end the Union is required to consider requests of non-union members and the expression of their views with respect to the subject of collective bargaining and to give them notice of or opportunity for hearing on its proposed action.

The record shows that plaintiffs knew as early as February, 1953 that the question of compulsory retirement was being considered by the Union. During the period thereafter until the second vote was taken it was a subject of constant discussion among employees on the streets. Plaintiffs made known by letters their protests to the Railroad before the first vote was taken. They again protested to the Union by letter through able counsellor. This previously mentioned letter sets forth the reasons why plaintiffs felt that compulsory retirement was illegal. The reasons set forth in that letter are practically the same reasons relied upon in the bill of complaint as amended as reasons why this court should declare the agreement invalid, except plaintiffs did not claim that they were entitled to appear in the meetings of the Union to express their views in opposition to the compulsory retirement provision. Plaintiff Taylor had that right as a member of the Union.

The court concludes that failure to invite plaintiffs to a meeting of the Union to express their views does not invalidate the bargaining agreement.

The court further concludes that the Union acted fairly and in good faith in entering into the bargaining agreement with the Railroad on February 1, 1954.

Let an order be submitted sustaining the motion for summary judgments dismissing the case.