Joe McMULLANS, M. R. Edwards and E. W. Pate, Appellants,

v.

KANSAS, OKLAHOMA AND GULF RAILWAY COMPANY, Incorporated; and Local No. 488 of Brotherhood of Locomotive Firemen and Enginemen, an unincorporated labor association; and J. B. Farrell, Chairman, W. B. Moore, Vice-Chairman, and F. E. Daniel, Secretary of the Committee of the said Brotherhood of Locomotive Firemen and Enginemen, and as Representatives of all of the Employees of the Class coming within the scope of the collective bargaining agreement between the said Railway Company and the said Brotherhood, Appellees.

No. 5153.

United States Court of Appeals Tenth Circuit.

Jan. 10, 1956.

Edwin Langley and Chal Wheeler, Muskogee, Okl. (Chester Norman, Muskogee, Okl., was with them on the brief), for appellants.

James D. Gibson, Muskogee, Okl., for Kansas, Oklahoma & Gulf Railway Company.

Harold C. Heiss, Cleveland, Ohio (Harold R. Shoemake, Muskogee, Okl., was with him on the brief), for Local No. 488 of Brotherhood of Locomotive Firemen and Enginemen and the individual appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiffs are able-bodied locomotive engineers over the age of seventy years with regular runs on the defendant railroad. They brought this action to restrain enforcement of a provision in a collective bargaining agreement requiring compulsory retirement at the age of seventy. The challenged provision of the contract provides that, "* * * all employees coming within the scope of agreements between the parties who have heretofore attained the age of 70 or who shall attain the age of 70 before November 1, 1954, shall be retired from railway service covered by agreements between these parties on October 31, 1954." The District Court denied the plaintiffs any relief. 129 F.Supp. 157.

The material facts are not in dispute. The members of two labor organizations are involved, the Brotherhood of Locomotive Engineers, known as the B.L.E., and the Brotherhood of Locomotive Firemen and Enginemen, called the B.L.F. & E. The craft concerned herein is locomotive firemen and engineers operating locomotives on the defendant railroad. The engineers are eligible for membership in either the B.L.E. or the B.L.F. & E. Two of the plaintiffs were members of the B.L.E., and the third was a member of the B.L.F. & E. The basic agreement between the railroad and the craft has been in existence since March 1, 1925. At an election held under the auspices of the National Mediation Board, the B.L.F. & E. was designated to represent the craft for the purposes of the Railway Labor Act and was duly certified. Prior to the agreement on the dis-

puted provisions of the contract, there was considerable discussion among the engineers concerning the proposal for compulsory retirement, and it was generally known that such an agreement was "in the making". No formal notice of the proposed provisions was given the B.L.E., or individually to the plaintiffs. At a regular meeting of the B.L.F. & E., the provision was unanimously approved and the contract was signed. Shortly thereafter, members of the craft were furnished copies of the contract and the plaintiffs were notified by the railroad that they would be retired on the specified date.

It is first contended that compulsory retirement of railroad workers is not a proper subject for collective bargaining under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. 45 U.S.C.A. § 152, First, requires the railroads to exert every reasonable effort to make and maintain agreements "concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." The plaintiffs say that compulsory retirement is not referred to in the Act, and that it does not fall within the provision concerning rates of pay, rules or working conditions.

■ Collective bargaining agreements creating a seniority system do not create a permanent status or give an indefinite tenure to employees. Elder v.

New York Cent. R. Co., 6 Cir., 152 F.2d 361; System Federation No. 59 of Railway Employees Department of American Federation of Labor v. Louisiana & A. R. Co., 5 Cir., 119 F.2d 509, 515, certiorari denied 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526. Seniority among railroad employees is contractual and does not arise from mere employment. Colbert v. Brotherhood of R. R. Trainmen, 9 Cir., 206 F.2d 9, certiorari denied 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422. Those who acquire seniority rights under a contract are bound by the possibility that the contract may be changed, and the rights thereunder revised or abrogated. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; Lewellyn v. Fleming, 10 Cir., 154 F.2d 211, certiorari denied 329 U.S. 715, 67 S.Ct. 45, 91 L.Ed. 620; Elder v. New York Cent. R. Co., supra; Lamon v. Georgia Southern & Florida Railway Co., 1955, Ga.Sup., 90 S.E.2d 658. Employees have no vested right in the seniority created by contract and the Railway Labor Act does not undertake to guarantee them a job for life. The employer has the right to select employees and to discharge them, so long as the collective bargaining processes are not impaired. Beeler v. Chicago, R. I. & P. Ry. Co., 10 Cir., 169 F.2d 557, certiorari denied 335 U.S. 903, 69 S.Ct. 407, 93 L.Ed. 437; Lamon v. Georgia Southern & Florida Railway Co., supra. A myriad of matters arising out of the employer-employee relationship are negotiated, although they are not specifically referred to in the bargaining language of the Act.[1] Seniority and

1. Referring to this same contention in Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 251, 12 A.L.R.2d 240, certiorari denied in part 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112, and judgment affirmed in part American Communications Ass'n C. I. O. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, the Court of Appeals said:

"A few of such matters are: a provision agreeing to bargain concerning nondiscriminatory discharges; a provision concerning seniority rights, with its far reaching effect upon promotions and demotions; a provision for the benefit of employees inducted into the military service; a provision determining vacation periods with pay; a provision concerning the safety and health of employees, including clinic facilities; a provision for inplant feeding, and a provision binding the Company and the Union to bargain, in conformity with a Directive Order of the National War Labor Board concerning dismissal or severance pay for employees displaced as the result of the closing of plants or the reduction in the working force following the termination of the war. None of these matters and many others which

nondiscriminatory discharge, along with wages, are fundamentally contractual and are the most common subjects of bargaining. If seniority and nondiscriminatory discharges could not have been negotiated, then the employing railroad would have been at liberty to discharge the plaintiffs at will, or eliminate their seniority which was retained by virtue of the basic contract provisions and under which they now claim the right to work.

The statute places upon the bargaining representative the obligation to represent all those employees within the craft which it represents, and not just the majority which elected it. It must make an honest effort to serve the interests of all of them without discrimination. Ford Motor Co. v. Huffman, supra; Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Lewellyn v. Fleming, supra. But as the court said in the Ford Motor Case [345 U.S. 330, 73 S.Ct. 686], "complete satisfaction of all who are represented is hardly to be expected", and contracts may be made which have unfavorable effects on some. Steele v. Louisville & N. R. Co., supra; Lewellyn v. Fleming, supra. The seniority principle necessarily adversely affects some employees, particularly the younger employees, but it has always been recognized as a proper subject for negotiation. We think the trial court was justified in concluding that the agreement was negotiated in good faith by the duly elected representatives of the craft in accordance with the basic agreement and that the Act does not discriminate against any special class or minority.

In support of their contention that the bargaining representative negotiated solely for the benefit of employees with less seniority, and did not represent them without hostility and discrimination, the plaintiffs rely on such cases as Steele v. Louisville & N. R. Co., supra; Wallace Corp. v. N. L. R. B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216; Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S. Ct. 1022, 96 L.Ed. 1283. Those cases are clearly distinguishable. The bargaining agent in each of those cases sought by contract to eliminate certain employees from employment, either because they were Negroes, or because of former membership in a union unsatisfactory to the employer. The compulsory retirement age provided for in the contract before us affects all persons covered by the agreement in exactly the same manner, but at a different time, while the provisions in the cited cases affected only certain individuals. Lamon v. Georgia Southern & Florida Railway Co., supra.

The question of the right to contract for compulsory retirement arose in Inland Steel Co. v. N. L. R. B., supra. It was there contended that under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., compulsory retirement was not included in the bargaining provisions which referred to "rates of pay, wages, hours of employment, or other conditions of employment". 29 U.S.C.A. § 159(a). The Court of Appeals of the Seventh Circuit in that case stated that it was convinced "that the language employed by Congress, considered in connection with the purpose of the Act, so clearly includes a retirement and pension plan as to leave little, if any, room for construction. While, as the Company has demonstrated, a reasonable argument can be made that the benefits flowing from such a

---

could be mentioned are referred to in the Act 'in haec verba,' yet we think they are recognized generally, and they have been specifically recognized by the Company in the instant case as proper matters for bargaining and, as a result, have been included in a contract with the Union. Some of the benefits

thus conferred could properly be designated as 'wages,' and they are all 'conditions of employment.' We think no common sense view would permit a distinction to be made as to the benefits inuring to the employees by reason of a retirement and pension plan."

plan are not 'wages,' we think the better and more logical argument is on the other side, and certainly there is, in our opinion, no sound basis for an argument that such a plan is not clearly included in the phrase, 'other conditions of employment.' The language employed, when viewed in connection with the stated purpose of the Act, leads irresistibly to such a conclusion. And we find nothing in the numerous authorities called to our attention or in the legislative history so strongly relied upon which demonstrates a contrary intent and purpose on the part of Congress." It is urged that the bargaining language of the National Labor Relations Act is broader than that of the Railway Labor Act, and that for this reason the Inland Case is not authority here. While there is some difference in the wording of the two provisions, we think that they were intended to include substantially the same subjects. The Supreme Court of Georgia in Lamon v. Georgia Southern & Florida Railway Co., supra, in a well considered opinion squarely held that pensions and compulsory retirement were proper subjects of collective bargaining under the Railway Labor Act. We agree with the reasoning of the Inland and Lamon cases. The Act is remedial and should be broadly and liberally construed to accomplish the purposes it was designed to meet. N. L. R. B. v. Metallic Bldg. Co., 5 Cir., 204 F.2d 826, certiorari denied 347 U.S. 911, 74 S.Ct. 473, 98 L.Ed. 1068; N. L. R. B. v. Knoxville Pub. Co., 6 Cir., 124 F.2d 875; Nashville, C. & St. L. Ry. v. Railway Employees' Dept., etc., 6 Cir., 93 F.2d 340, certiorari denied 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110; Jeffery-De Witt Insulator Co. v. N. L. R. B., 4 Cir., 91 F.2d 134, 112 A.L.R. 948, certiorari denied 302 U.S. 731, 58 S.Ct. 55, 82 L.Ed. 565.

■ If the Act is construed as suggested by the plaintiffs, then, as we have said, the railroads could not be compelled to negotiate over nondiscriminatory discharge and seniority rights. These matters are now generally controlled by negotiated contracts. We hold that the right to bargain for compulsory retirement is in the same category as the right to bargain and contract for wages, seniority and discharge of employees, and that it is authorized by the Railway Labor Act. Boget v. Chicago and Northwestern Railway Co., D.C.N.D.Ill., decided December 12, 1951; Goodin v. Clinchfield R. Co., D.C.E.D.Tenn., 125 F.Supp. 441; Lamon v. Georgia Southern & Florida Railway Co., supra.

■■ It is suggested that with the enactment of the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq., Congress has preempted the field, and that when the Supreme Court held that Congress could not by statute constitutionally fix a retirement age, the parties could not legally contract on the subject. See Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468. This does not follow. There is nothing illegal or immoral about a contract for compulsory retirement. It is a principle now commonly accepted in industry and other lines of endeavor, including employees of the United States. 5 U.S.C.A. § 715. It is closely akin to the right to negotiate for rules of discharge and seniority of employees. The Railroad Retirement Act does not purport to fix an age of compulsory retirement and Congress does not have the power. Railroad Retirement Board v. Alton R. Co., supra. It establishes a method for creating an annuity fund in which qualified employees may participate when employment has ceased by retirement or relinquishment of the right to continue in the service of the employer. 45 U.S.C.A. § 228b; Boget v. Chicago and Northwestern Railway Co., supra. A contract requiring retirement at a specified age does not in any way conflict with its provisions and there is no indication in the Alton Case that compulsory retirement cannot be effectively negotiated by contract. The decision went no further than to say that the right to compel re-

tirement does not lie within the orbit of Congressional power. Alton R. Co. v. Railway Retirement Board, D.C.D.C., 16 F.Supp. 955, 959.

■ Finally, the plaintiffs contend that the agreement was invalid because the required notice was not given to them and the B.L.E., and that the agreement deprives them of property rights in violation of the Fifth Amendment to the Constitution. These contentions are without merit. It is conceded that the B.L.F. & E. was the duly selected and certified bargaining agent for the craft including these plaintiffs, with authority to contract with the railroad on matters relating to rates of pay, rules and working conditions. The Railway Labor Act requires railroads to "treat with" certified representatives of the employees and with no others. 45 U.S.C.A. § 152, Ninth; Virginian R. Co. v. System Fed. No. 40, 300 U.S. 515, 545, 548, 57 S.Ct. 592, 81 L.Ed. 789; Lewellyn v. Fleming, supra. In the Lewellyn case [154 F.2d 213], it was stated that the Act "undoubtedly included the authority to prospectively contract with reference to seniority rights of the members of the craft, whether members of the union or not". The compulsory retirement provisions of the contract with which we are dealing are prospective, and are not retroactive in any respect. They do not affect rights already accrued. They seek to change existing terms of the contract and to apply those changes in the future. This, the bargaining agent has the power to do. Elgin, J. & E. Ry. Co. v. Bur-

ley, 325 U.S. 711, 739, 65 S.Ct. 1282, 89 L.Ed. 1886. The contractual provisions were for the collective interests of all the employees represented, even though some were adversely affected. Since the Railway Labor Act does not create a permanent status for employees or fix unlimited tenure in their jobs, there was no violation of the plaintiffs' Constitutional rights.

■ The bargaining agent is the representative of the craft and is not required to consult with the individual members or to give them notice of contemplated contractual actions within the scope of its authority. It has the authority to bind its principal, if it acts within the statutory provisions. Section 6 of the Railway Labor Act has no application here. 45 U.S.C.A. § 156.[2] This section requires the carriers and the bargaining representatives to give thirty days' notice of any intended changes in the agreements affecting pay, rules and working conditions, and to fix the time and place for the beginning of a conference between the representative of the carrier and the employees. Obviously, it is not intended as a restriction of the bargaining agent or a requirement of personal notice to employees. Its purpose is to fix a procedure for the commencement of conferences between representatives of the two parties if changes are to be made in the contract. Childers v. Brotherhood of R. Trainmen, 8 Cir., 192 F.2d 956.

Affirmed.

2. This section reads in part:
"Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice."