Herbert J. FAGAN, et al. on their own behalf and on the behalf of all other persons similarly situated, Plaintiffs,

v.

PENNSYLVANIA RAILROAD COMPANY and Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, Defendants.

Civ. A. No. 5968.

United States District Court
M. D. Pennsylvania.

May 15, 1959.

I. Herbert Rothenberg, Philadelphia, Pa., Prowell, Kunkel & Naugle, Harrisburg, Pa., for plaintiffs.

Richard N. Clattenburg, Hermon M. Wells, Philadelphia, Pa., Nauman, Smith, Shissler and Hall, Harrisburg, Pa., for defendant, Pennsylvania Railroad Co.

Allen Olmsted, 2nd, Philadelphia, Pa. (Saul, Ewing, Remick & Saul, Philadelphia, Pa., of counsel) Edward J. Hickey, Jr., James L. Highsaw, Jr., Washington, D. C. (Mulholland, Robie & Hickey, Washington, D. C., of counsel), John Y. Scott, Harrisburg, Pa., for defendant, Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes.

FOLLMER, District Judge.

This is an action brought by 157 members of Harrisburg local lodge, Square Deal Lodge No. 421 (hereinafter called "Local Lodge") of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter called "Brotherhood"), and the Pennsylvania Railroad Company (hereinafter called "Railroad"), seeking to set aside a seniority agreement which, it is alleged, was entered into between the defendants and their agents in arbitrary, capricious and discriminatory impairment of the seniority and other property rights of the plaintiffs, and in violation of the established law, policy and resolution of the Brotherhood as established at its National Conventions. The complaint further prays for job restoration, wage indemnification and injunctive relief.

The matter is presently before the Court on

1. Motion of Railroad for judgment on the pleadings, on the grounds that the complaint fails to state a claim upon which relief can be granted.

2. Motion of Brotherhood to dismiss the complaint or in the alternative for summary judgment for the following reasons:

(a) complaint fails to state a claim upon which relief can be granted;

(b) no dispute between the parties as to any material issue of fact, but

only as to the legal conclusions to be drawn from the facts;

(c) plaintiffs have failed to exhaust contractual remedies.

From the pleadings, supporting affidavit, arguments and briefs, the facts on which the parties are in substantial agreement are as follows:

The Brotherhood is the duly authorized representative under the Railway Labor Act to negotiate agreements with the Railroad on behalf of plaintiffs and other carrier employees.

On and prior to October 28, 1955, by written agreement between the Railroad and the Brotherhood, and within the geographical precincts concerned in this action, there were the three following seniority structures: (1) The Philadelphia Terminal Division (comprised of the Railroad's employees engaged in the City of Philadelphia, and immediate environs); (2) The Atlantic Division (embracing Railroad's employees engaged in precincts adjoining the City of Philadelphia and its immediate environs); and (3) The Philadelphia Division (consisting of the Railroad's employees working in the Harrisburg area). Each of the three seniority districts had a separate seniority roster.

On November 1, 1955, the Railroad placed in effect an extensive reorganization plan abolishing certain regions and establishing in their place certain operating regions. Concurrently with this reorganization Railroad and Brotherhood entered into an agreement dated October 28, 1955, effective November 1, 1955, which affected the seniority rights of the employees represented by the Brotherhood, by changing the seniority districts to conform to the new organization of the Railroad. This agreement, inter alia, merged The Philadelphia Terminal Division and The Philadelphia Division into a single and consolidated seniority district known as Philadelphia Region Seniority District; the former Atlantic Division was renamed the Atlantic District of the Philadelphia Region and remained a separate seniority

district. Under the new agreement the roster of employees represented by the Brotherhood in the former Philadelphia and Philadelphia Terminal seniority districts were merged or "dovetailed" and the seniority dates of employees in the new seniority district were the earliest dates held by them on any roster in the territory included in the new seniority district. The effect was that although prior to November 1, 1955, employees, including plaintiffs, on the seniority roster of the Philadelphia Division could exercise seniority only to positions on that Division and employees on the roster of the Philadelphia Terminal Division could exercise seniority only to positions on that Division, on and after November 1, 1955, all such employees could exercise seniority to positions in the combined territory of the new Philadelphia Region Seniority District. Immediately prior to November 1, 1955, there were a total of 3791 positions of employees in this territory, 1120 in the Philadelphia Division Seniority District and 2671 in the Philadelphia Terminal Seniority District.

Plaintiffs contend that the merging or "dovetailing" of the seniority lists of the former Philadelphia and Philadelphia Terminal seniority districts has unlawfully impaired and prejudiced their seniority and other rights flowing from the positions formerly held by them on the Philadelphia Division seniority district roster.

It is furthermore plaintiffs' contention that the agreement of October 28, 1955, between Railroad and Brotherhood is unlawful for the following reasons:

1. Brotherhood and Railroad entered into the agreement without consultation with, notice to or advice of Square Deal Lodge No. 421, its members or the plaintiff employee-members.

2. Defendants' conduct violated custom, precedent and tradition in such matters.

3. The agreement and action and conduct of Brotherhood violated the established law, policy and resolutions of Brotherhood of which both defendants were aware.

4. Defendants' action was arbitrary and capricious and discriminated against plaintiffs and other employees in the former Philadelphia Division.

5. The agreement violated the provisions of the Railway Labor Act.

6. The agreement will affect the relationship of Railroad with its employees and the performance by Railroad of its duties under the law, and will have an immediate direct and serious impact upon interstate commerce.

Finally, plaintiffs allege that they have registered protest within the Brotherhood on the revised agreement and have been unable to exhaust the internal remedies provided under the Brotherhood Constitution and governing laws because the Grand President of the Brotherhood has failed to render a decision on their protest, thereby rendering impossible further appeal to the executive council of the organization as permitted by the Constitution, hence this suit.

As above indicated, Brotherhood moved to dismiss the complaint or in the alternative for summary judgment. Attached to the motion and made a part thereof were the following:

1. Affidavit of George M. Harrison, Grand President of Brotherhood, and attachments.

(a) Constitution of Grand Lodge of Brotherhood, Statutes for Government of Lodges of Brotherhood and Protective Laws of Brotherhood.

(b) Correspondence between George M. Harrison and plaintiffs.

2. Affidavit of S. V. W. Loehr, General Chairman, Pennsylvania Railroad System Board of Adjustment of Brotherhood, and attachments.

(a) Agreement of October 25, 1955, between Railroad and Brotherhood.

(b) Correspondence between S. V. W. Loehr and plaintiffs and others.

3. Affidavit of A. B. Seward, General Secretary-Treasurer of Pennsylvania

**468**

Railroad System Board of Adjustment of Brotherhood, and attachments.

(a) By-Laws of Pennsylvania Railroad System Board of Adjustment of Brotherhood.

(b) Collective Bargaining Agreement between Brotherhood and Railroad.

(c) Letter of January 30, 1956, from affiant to Messrs. McLaughlin and Wallace, President and Recording Secretary of Local Lodge.

4. Affidavit of Robert M. Mayberry, Grand Lodge Organizer with Brotherhood.

■ Plaintiffs contend that Brotherhood's motion to dismiss is bad as a "speaking demurrer" and accordingly should be dismissed and the defendants be required to file their answers and proceed to the trial of the cause. In support of their position plaintiffs cite the Pennsylvania Rules of Civil Procedure, 12 P.S.Appendix and a number of Pennsylvania cases. Not a single Federal citation was given.

■ The complaint in this case bases jurisdiction under Railway Labor Act of May 20, 1926, c. 347, § 1, et seq., 44 Stat. 577, as amended 45 U.S.C.A. §§ 151 et seq., (hereinafter called "Act"). As stated by Judge Holtzoff in Blackwelder v. Crooks, D.C.D.C.1957, 151 F.Supp. 26, 28, "Since we are dealing here, however, with procedural matters, state decisions are not of much help because Federal procedure is governed by Federal Rules and by decisions of Federal courts, which differ on many points from the procedure prevailing in some of the States."

Rule 56, Federal Rules of Civil Procedure, 28 U.S.C., specifically provides for the filing of supporting affidavits with a motion for summary judgment. The motion is therefore fundamentally not bad as a "speaking demurrer." However, in Frederick Hart & Co. Inc. v. Recordgraph Corporation, 3 Cir., 169 F.2d 580, 581, the court stated:

" * * * It is well-settled that on motions to dismiss and for summary judgment, affidavits filed in their support may be considered for the purpose of *ascertaining whether an issue of fact is presented, but they cannot be used as a basis for deciding the fact issue.* An affidavit cannot be treated, for purposes of the motion .to dismiss, as proof contradictory to well-pleaded facts in the complaint. * * *." [1]

However, the complaint repeatedly refers to an agreement between Railroad and Brotherhood under date of October 28, 1955, to the By-Laws, statutes, rules and regulations of Grand Lodge, the rules and regulations of Railroad, without attaching any of the same to the complaint.

In Detweiler v. Hatfield Borough School District, 1954, 376 Pa. 555, 558, 104 A.2d 110, 113, the Supreme Court of Pennsylvania clearly sets forth the Pennsylvania position on speaking demurrers in situations such as we have in the instant case as follows:

" * * * The time honored principle that in passing on a demurrer a court cannot consider matters collateral to the pleading opposed but only such matters as arise out of the statement of claim or complaint itself, is still preserved under Pa.R.C.P. § 1017, 12 P.S.Appendix. See Goodrich-Amram Civil Practice § 1017(b)–11. In the instant case, the plaintiffs' causes of action were predicated on the unconstitutionality and illegality of the agreements entered into and about to be entered into by the defendants. Since the plaintiffs averred the existence of these documents and relied on them to establish their claims, the defendants could properly annex the agreements to their demurrers for they were in every sense of the term factual matters arising out of the complaints them-

---

1. For contra position see Shotwell v. United States, 1958, D.C.E.D.Wash., 163 F.Supp. 907.

selves. The instruments formed the very foundation of the suits and were properly considered by the court below in determining whether the plaintiffs alleged any facts justifying the equitable relief sought. * * *."

Consequently, the Brotherhood's governing laws must, under Pennsylvania law, be considered as a part of the complaint on a motion to dismiss.

The substance of the complaint is that Railroad and Brotherhood by agreement combined two seniority districts on the Railroad which has adversely affected the position of plaintiffs on their seniority roster.

The complaint bases jurisdiction under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. It states that Brotherhood qualified and is functioning under said Railway Labor Act "to represent and bargain collectively, on a national and local level, for its members who are engaged and employed in the railroad industry, * * *.", and that the plaintiffs "are presently members in good standing of both the Defendants Grand Lodge (Brotherhood) and the aforesaid Local Lodge." In addition, there was filed of record in the case a stipulation by counsel for plaintiffs and defendants to the effect that Brotherhood is the duly authorized representative under the Railway Labor Act to negotiate agreements with Railroad on behalf of the plaintiffs and other carrier employees.[2]

The Act clearly places upon carriers and their employees the obligation to make and maintain agreements concerning rates of pay, rules and working conditions (45 U.S.C.A. § 152, First), and provides for the designation by the parties of representatives for the purposes of the Act (45 U.S.C.A. § 152 Third and Fourth).

The Supreme Court in Virginian Railway Co. v. System Federation No. 40, Railway Employees Department of the American Federation of Labor, 300 U.S. 515, 546, 548, 57 S.Ct. 592, 599, 81 L.Ed. 789, in interpreting Section 2, Ninth, of the amended act (45 U.S.C.A. § 152, Ninth), said:

"* * * It provided a means for ascertaining who are the authorized representatives of the employees through intervention and certification by the Mediation Board, and commanded the carrier to treat with the representative so certified. * * *.

* * * * * *

"* * * The obligation imposed on the employer by section 2, Ninth (45 U.S.C.A. § 152, subd. 9), to treat with the true representative of the employees as designated by the Mediation Board, when read in the light of the declared purposes of the act, and of the provisions of section 2, Third and Fourth (45 U.S.C.A. § 152 subd. 3, 4), giving to the employees the right to organize and bargain collectively through the representative of their own selection, is exclusive. It imposes the affirmative duty to treat only with the true representative, and hence the negative duty to treat with no other. * * *."

There is no dispute in this case that the agreement of October 28, 1955, was entered into and executed by the authorized representative of Railroad and Brotherhood, as contemplated and required by the Act. As a matter of fact, plaintiffs ground their claims on the 1942 basic collective bargaining agreement between Railroad and Brotherhood pursuant to which separate seniority districts were established for employees in the Philadelphia and Harrisburg areas. In essence, the position of the plaintiffs is that Railroad and Brotherhood could not revise the 1942 agreement and affect their seniority rights arising out of such agreement by merging the two seniority districts into a single seniority roster.

2. The carrier is required by the Act to bargain exclusively with the chosen representative of the craft. Lewellyn v. Fleming, 10 Cir., 154 F.2d 211, 213.

This position is unquestionably wrong as a matter of law.

■ It has been firmly established that seniority is a contract right, arising solely from contract and subject to change with the contract, and that an employee has no inherent right to seniority in service.[3]

In Elder v. New York Cent. R. Co., 1945, 6 Cir., 152 F.2d 361, 364, 365, the court said, inter alia:

"The seniority right of the man who toils, indoors or out, in a shop or in an office, is a most valuable economic security, of which he may not be unlawfully deprived. The right, however, is not inherent. It must stem either from a statute or a lawful administrative regulation made pursuant thereto, or from a contract between employer and employee, or from a collective bargaining agreement between employees and their employer. In the absence of statute, mere employment independent of the contractual conferring of special benefits upon those who have longest service records with the individual employer, creates no rights of seniority in retention in service or in reemployment. In the instant case, the appellant rests upon no right created by statute, but solely upon a collective bargaining agreement, made between the chosen representative of the workers and the employer. * * * His individual seniority rights were both created and limited by the bargain which was made for and was binding upon all employees for whom it was made. * * *.

" * * * the authorities are uniform to the effect that collective bargaining agreements do not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract beyond its life, when it has been terminated in accordance with its provisions.

* * * * * *

" ' * * * This agreement was executed for the benefit of all the members of the brotherhood and not for the individual benefit of plaintiff. When, by reason of changed economic circumstances, it became apparent that the earlier agreement should be modified in the general interest of all members of the brotherhood it was within the power of the latter to do so, notwithstanding the result thereof to plaintiff. The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all the members.' * * *."

The complaint charges that the revised seniority agreement is arbitrary, capricious, discriminatory and violates the requirements of the Act. In passing upon a similar allegation in a complaint in Pellicer v. Brotherhood of Ry. & S. S. Clerks, Freight Handlers, Express & Station Employees, D.C.S.D.Fla. 1953, 118 F.Supp. 254, 257, affirmed 5 Cir., 217 F.2d 205, the court said:

"Here, except for the claim amounting to no more than a conclusion of law that the amended agreement was arbitrarily entered into and is arbitrary and discriminatory in its terms and effects, there are no factual allegations in the complaint that the Express Company and the Brotherhood did not in good faith negotiate and make the seniority changes effectuated by the amended agreement. It would indeed 'turn the blade inward' were this Court to hold invalid and unlawful that which appears on the face of the complaint and attached exhibits to be a good faith effort on the part of the Brotherhood and

3. Trailmobile Co. v. Whirls, 1946, 331 U.S. 40, 53, 67 S.Ct. 982, 91 L.Ed. 1328;

Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 1953, 206 F.2d 9, 13.

Express Company to comply with pronouncements of the Supreme Court in the racial discrimination cases.

"It is significant that in cases where challenged changes in seniority provisions did not involve racial discrimination, the courts consistently have refused to upset the agreement. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; System Federation No. 59 of. Railway Employees' Department of American Federation of Labor v. Louisiana & A. Ry. Co., 5 Cir., 119 F.2d 509, certiorari denied 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526; Hartley v. Brotherhood of Railway & Steamship Clerks, 283 Mich. 201, 277 N.W. 885; Elder v. New York Central Ry. Co., 6 Cir., 152 F.2d 361; Lewellyn v. Fleming, 10 Cir., 154 F.2d 211. These cases establish that seniority rights stem either from a statute or are created by contract; that contractual provisions of bargaining agreements establishing such rights do not create a permanent status or give an indefinite tenure, but are subject to modification by the contracting parties; that changes effecting differentiations or unequal treatment among employees will not be invalidated unless some clearly expressed public policy is contravened; and that in the absence of fraud or bad faith the courts will not inquire into the motives which prompt such changes or substitute their judgment on the reasonableness of the modifications effected." [4]

The courts have not been blind to the fact that in the orderly and legal process of changing seniority rights brought about by negotiations between the carrier and the representatives in an honest effort to secure the greatest good for the greatest number some employees are of a necessity adversely affected thereby. In Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, in holding valid an agreement which worked to the disadvantage of some employees, the Supreme Court said:

"* * * Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

"Compromises on a temporary basis, with a view to long range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such matters as the unit within which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, their family responsibilities, injuries received in course of service, and time or labor devoted to related public service, whether civil or military, voluntary or involuntary. * * *."

The charges in the complaint unsupported as they are by any allegations of affirmative arbitrary, capricious or discriminatory conduct are mere conclusions of law.

---

4. See also Lewellyn v. Fleming, supra.

Furthermore, the agreement of May 1, 1942, clearly and specifically provided for the revision of seniority districts, and the adjustment of seniority when seniority districts are revised, such as here occurred on November 1, 1955. Rule 3–B–2 of the 1942 agreement reads:

"In the event of a change in seniority districts, the seniority of employes affected will be adjusted in the revised districts by the General Manager, Works Manager at Altoona Works, Officer in charge of System General Office Department (as the case may be) and the General Chairman."

In Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 206 F.2d 9, 11, 12, 13, (certiorari denied 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422) in speaking to the precise question, the court stated:

"The complexities in satisfactorily providing methods for solving operational problems in the 'railway world' so as to maintain the nationwide 'peace essential to the uninterrupted service of the instrumentalities of interstate commerce' have been recounted by the Supreme Court. And it is appropriate because of the representative origin of the Railway Labor Act and the pertinent Congressional amendments in 1934 creating and conferring jurisdiction in the National Railroad Adjustment Board of disputes of the kind alleged in the complaint that injunctive and other judicial process be witheld until the agency created by Congress to deal with the intricate and technical factors inherently involved in the interpretation of the 'Merged System Seniority' provisions contained in Article 36 of the agreement of December 22, 1942, acts in the premises. Until such procedure is invoked plaintiffs have not and cannot show irreparable loss and inadequacy of the legal remedy warranting the interposition of equity by the court.

"It is clear from the provisions of the Act that the individual employee is given the right as a 'party', 45 U.S.C.A. § 153, First, (i) to refer his grievance to the National Railway Adjustment Board and, furthermore, is entitled under First (j) of the same section of the Act as such 'party' to designate a representative of his own selection for and in proceedings at the National Board level. Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886. Thus there is vouchsafed a hearing before the agency designated by Congress and upon which jurisdiction has been conferred by Congress to also make findings and enter awards in all disputes between carriers and their employees growing out of grievances of the kind alleged in the complaint or out of the interpretation or application of agreements relative to working conditions, in which category in railway public service seniority is of course included.

\*    \*    \*    \*    \*    \*

"We think appellants fail to appreciate the essential difference between the suit laid in the complaint and cases wherein collective bargaining agreements containing invidious proscriptive factors that are inimical to statutory or constitutional right, such as racial discriminations, are presented to the court. Here no such right is involved. Seniority among railway workers is fundamentally and wholly contractual and it does not arise from mere employment and is not an inherent, natural or constitutional right."

It is significant that the only agreements revising seniority in railroads which have been invalidated by the courts are those which have had as their purpose injury to the seniority rights of Negroes solely for reasons of race, "obviously irrelevant and invidious," and not here involved.

The Pennsylvania Supreme Court in Grand Lodge of the Brotherhood of Railway and Steamship Clerks, etc. v. Girard Lodge No. 100, 1956, 384 Pa. 248, 120 A.2d 523, 528, in upholding Brotherhood action in "dovetailing" seniority in

another situation equally applicable here said:

"The defendant lodges were also aware, or, upon the slightest reflection, should have realized, that it was impossible under the existing circumstances for all their desires to be satisfied. When there are only five apples for six people, it is impossible for each person to receive a whole apple. * * *."

The complaint alleges that the revised seniority agreement is in violation of the established law and policy of Brotherhood but it does not cite any provision of the Brotherhood's Constitution which is alleged to be violated.

The 1955 agreement was entered into on behalf of Brotherhood by its Pennsylvania Railroad System Board of Adjustment pursuant to Section 14(a) of the "Protective Laws of the Brotherhood," (page 105) which said Protective Laws are properly before the Court and which provide:

"It shall be the duty of Boards of Adjustment, and the said Boards are hereby authorized, when acting in conformity with the Constitution and Protective Laws of the Brotherhood, and the by-laws of the Boards of Adjustment, to negotiate, maintain, revise, modify, adjust and interpret the agreements establishing and covering wages, working conditions and other employment relations in their respective jurisdiction."

The complaint cites only an alleged resolution of Brotherhood Conventions. This resolution was supplied by Brotherhood,—it was not a part of the complaint. A reading of the resolution clearly shows that it had only to do with transfers, consolidations, or abandonments of physical facilities. There are none such involved here. The revised seniority agreement in the instant case grew out of the internal reorganization by Railroad of its own management structure, which obviously made necessary a revamping of the entire seniority structure.

In Kent v. Civil Aeronautics Board, 2 Cir., 204 F.2d 263, 266 in sustaining as reasonable an order of the Civil Aeronautics Board directing the "dovetailing" of seniority lists of American Overseas Airlines and Pan American, upon the merger of those two carriers, contrary to the contentions of Pan American employees that the American Overseas Airlines employees should all go to the bottom of the combined list as new employees, the court said, inter alia:

"The paramount public interest required that due consideration be given conflicting seniority interests of both groups of these engineers. The Board has done that with meticulous care and, far from acting in an arbitrary and capricious way, has provided a method which fairly distributes the burdens and the benefits. * * *."

The allegation in the complaint that the revised seniority agreement was entered into without consultation with or notice to plaintiffs and their local lodge would not, even if true, affect in the slightest the validity of the agreement. The Brotherhood is the duly authorized representative under the Railway Labor Act to negotiate agreements with the Railroad on behalf of plaintiffs and other carrier employees. To give cognizance to any such claim would be completely disruptive of the intent, purpose and scope of the Act. In this connection it is significant that under Section 7 of the Brotherhood's Protective Laws the System Board, the contracting unit on behalf of the employees, is made up of representatives from the various Protective Committees of each lodge, which in turn are chosen from members of the lodge. It would therefore seem that under the Brotherhood's Protective Laws the interests of the individual employees are amply protected.

■■ Finally, it is clear that plaintiffs have failed to exhaust their administrative remedies within the Brotherhood and under their collective bargaining contract. The law in Pennsylvania is well established that members of a labor organization may not seek relief in the courts against their union until they have exhausted all remedies avail-

able to them within the union to satisfy their grievance.[5]

Article 5, Section 2(b) of the Constitution of the Grand Lodge of Brotherhood reads as follows:

"(b) No officer, member or subordinate unit of this Brotherhood may resort to any Court of Law or Equity or other civil authority either as parties plaintiff or for the purpose of securing an opinion or decision in connection with any alleged grievance or wrong concerning any case in controversy arising within the organization or under its law, until such officer, member or subordinate unit first shall have exhausted all remedies by appeal or otherwise provided herein for the settlement and disposition of such alleged rights, grievances or wrongs."

Brotherhood admits that the complaint correctly sets forth the appellate procedure available to plaintiffs under the governing laws of Brotherhood for relief within the organization in Paragraph 19, which reads as follows:

"19. Under the Constitution, By-Laws, Statutes, rules and regulations of the Grand Lodge, the order of appeal within the Grand Lodge from grievances of the kind herein set forth are as follows: To the Division or District Chairman, thence to the General Chairman, thence to the Board of Adjustment, thence to the Grand President and from the decision of the Grand President to the Grand Executive Council."

The complaint clearly discloses that this internal procedure has not been followed.

Plaintiffs set up as the reason for their failure to utilize the procedures that an appeal had been submitted to the union president and that he had refused to render a decision.

Article 16, Section 2(a) of the Brotherhood Constitution reads as follows:

"Section 2. (a) Between Conventions all executive and judicial power of the Grand Lodge—except as the law provides in defining duties of the Grand Lodge officers, the Finance Committee, Board of Trustees and the Board of Advocates, the handling of referendum and recall and special conventions—shall be vested in the Grand Executive Council."

Plaintiffs cite nothing in the Brotherhood governing laws which prevent their recourse to the Grand Executive Council for such help as they feel they need regardless of the action or the inaction of the President.

As between Railroad and Brotherhood, Railroad in its answer sets forth at large that portion of the basic collective bargaining agreement here involved, setting forth a procedure for the handling of protests, claims and grievances, with ultimate resort to the National Railroad Adjustment Board, a Federal Agency created by the Railway Labor Act to hear and determine such grievances.

Colbert v. Brotherhood of Railroad Trainmen, supra, presented a situation almost identical to the instant case. There, as will be noted from the above quotation, the court sustained the action of the District Court in dismissing the complaint which sought a decree declaring the provision for merged seniority invalid and enjoining its enforcement.

The complaint fails to allege facts to support any charges of Constitutional or statutory discrimination or any facts to show that Brotherhood and Railroad did not in complete good faith effect the changes in seniority districts and seniority standing necessitated by Railroad's system-wide reorganization.

The defendants are clearly entitled to judgment as a matter of law on the undisputed facts appearing in the pleadings.

5. Trainer v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Local No. 516, 1946, 353 Pa. 487, 46 A.2d 463.