177 F.Supp. 421 (1959)
James A. GAINEY and J. L. Young, Individually and on behalf of others similarly affected
v.
BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES
and
The Pennsylvania Railroad Company.
Civ. A. No. 26133.
United States District Court E. D. Pennsylvania.
August 31, 1959.
*422 *423 Laurence J. Richette, Philadelphia, Pa. (Meehan, Neil & Richette, Philadelphia, Pa., on the brief), for plaintiffs.
Walter Biddle Saul, Philadelphia, Pa. (Saul, Ewing, Remick & Saul, Philadelphia, Pa., on the brief), for defendant Brotherhood.
Robert M. Landis, Philadelphia, Pa. (Owen B. Rhoads, Richard N. Clattenburg, Ronald P. Wertheim, and Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for defendant Pennsylvania Railroad Company.
LORD, District Judge.
The two named plaintiffs are employees of the Pennsylvania Railroad who assert wage claims against the carrier, and claims for damages and refund of dues against the union. The named defendant union will hereafter be called The Brotherhood; the defendant carrier will be spoken of as The Railroad; and references to The Act will signify the Railway Labor Act, 45 U.S.C.A. § 151 et seq.
Each defendant has moved to dismiss, raising a variety of defenses and objections to be discussed herein.
The complaint, consisting of 20 paragraphs, an exhibit, and an amendment, was filed by plaintiffs in the form of a class bill on behalf of themselves and other persons similarly situated to recover about $1,750,000 back wages from the Railroad, a like amount as penalty against the Brotherhood, and an indeterminate sum for refund of dues paid to the latter.
The bill alleges that the Brotherhood is the duly authorized bargaining agent of the clerical employees (including plaintiffs as "tallymen") of the Railroad, so certified under the Act. A bargaining agreement between the Brotherhood, representing the employees, and the Railroad was executed in 1942, covering the entire Pennsylvania Railroad System.
Under the terms of this agreement, tallymen at freight stations in the Central Region of the Railroad were paid on a straight hourly basis, whereas tallymen in the Eastern Region were paid on a tonnage rate, depending on the amount of freight handled. As a result, the Eastern Region tallymen (plaintiffs) received less take home pay per month than the Central Region men.
In paragraphs I through VII, in which the foregoing facts appear, there are the following recitals, among others. The named plaintiffs are residents, respectively, of Camden, New Jersey and Philadelphia, Pennsylvania. The Brotherhood does business in Pennsylvania, maintains an office in Philadelphia, and is there represented by an authorized agent.
In paragraph I this cause is said to be
"a civil action arising under the Constitution and laws of the United States brought under the Railway Labor Act, 45 U.S.Code 151 et seq."
In paragraph V plaintiff says:
"The jurisdiction and venue of this Court are established by precedents of the United States Supreme Court which hold that the (Federal) right not to be discriminated against is implied in the Railway Labor Act. (45 U.S.Code 152 et seq.)"
The alleged class on whose behalf the suit is brought is those who are or were since August 1, 1950, the employees classified as Group I workers, i. e. clerks more specifically known as "tallymen" in the Eastern Region of the Pennsylvania Railroad system. In that area (Altoona east to New York, Philadelphia, and Washington, D. C.) the asserted monthly wage disadvantage, by comparison to the Central Region employees, was approximately $25 per month (and later, due to general wage increases, $30 per month). In addition, the Central employees received sick leave benefits not available to the Eastern group.
The crucial paragraph VIII reads:
"This arbitrary differential, based on geography alone, was the subject of a dispute between the plaintiffs and the defendant railroad company and finally, S.V.W. Loehr, General Chairman of the Pennsylvania Railroad System Board of Adjustment of the defendant Brotherhood proceeded to negotiate a settlement of *424 the disputein accordance with the grievance processing machinery of the Railway Labor Actand on August 1, 1951 an agreement was consummated by Mr. Loehr on behalf of the plaintiffs and Mr. Stewart, Superintendent of Stations & Transfer on behalf of the Pennsylvania Railroad Company. In substance the defendant railroad company agreed to pay `tallymen' on the Eastern Region the same monthly rate of pay then prevailing on the Central Region. Fringe benefits were likewise equalized between the two regions. This understanding between the Brotherhood and the carrier was reduced to writing as was the custom in like matters by a letter from Mr. Loehr to the Pennsylvania Railroad Company confirming the change in rate of pay. This letter is attached hereto and marked Exhibit `A.'"
Recitals add that the Railroad later refused to effectuate the agreement, and that the Brotherhood failed to enforce it, or follow up the negotiations. An amendment states that the Railroad, moreover, in 1951 eliminated tonnage payments to the tallymen, in contravention of the Act as well as the 1942 collective bargaining agreement.
After reciting the enforcement machinery which was at the disposal of the Brotherhood under the Act, the fact that the Brotherhood at all times enjoyed the benefit of competent counsel is pointed out. The next allegation, XIII, must speak for itself:
"The only reason for failure of the Brotherhood to compel the Pennsylvania Railroad Company to abide by its agreement is that the Pennsylvania Railroad Company could control union officers at will. For all of the officers of the Pennsylvania Railroad System Board of Adjustment, Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees were former officers of the Pennsylvania Railroad Company union which was disbanded by the carrier in 1937 when the Brotherhood obtained the collective bargaining rights for this craft on the Pennsylvania Railroad."
Paragraphs XIV and XV state that plaintiffs have no specific remedy under the Act, and
"* * * no remedy within the Brotherhood since this complaint against the Pennsylvania Railroad Company has gone unheeded by all echelons of the Brotherhood since 1951."
After reciting the resultant economic hardship to plaintiffs, XVII says:
"Though the carrier has a constitutional right to discriminate against employees when it agrees to remove that discrimination as a part of a collective bargain it cannot then attempt to abrogate that agreement and renew the discrimination to the pecuniary detriment of employees."
Paragraph XVIII alleges the wrongful discrimination, asserts third party beneficiary rights of the plaintiffs in the alleged agreement; and claims the right of plaintiffs to enforce the agreement against the Railroad and "to sue the Brotherhood for breach of trust." Paragraph XIX specifies actions which the Brotherhood might have taken by way of enforcement of the alleged agreement and concludes with the recital that the Brotherhood continues to ignore its duty.
Damages are asserted, as result of defendants' wrongful acts, on behalf of "a minimum of 600 persons on the Eastern Region" comprising the class, at $30 per month since 1950amounting to $1,734,000 exclusive of interest. In addition to general equitable relief, they demand:
"1. Mandatory injunction compelling defendant Pennsylvania Railroad Company to equalize the pay scale [as described];
"2. Damages against the Pennsylvania Railroad for losses in earnings for a minimum of $1,734,000.

*425 "3. Interest against the Pennsylvania Railroad Company at 6 per cent from August 1, 1951 to the date of judgment.
"4. Punitive damages on item (2) supra against the defendant Brotherhood equal to the judgment assessed against the Pennsylvania Railroad Company for wanton breach of trust and violation of the duty owed to the plaintiffs as agents, and for violating their statutory duty.
"5. An order compelling the defendant Brotherhood to return dues collected from plaintiffs for the period in question since defendant gave plaintiffs no quid pro quo for these union dues."

1. Jurisdiction over the Person; Insufficiency of Service of Process
The Brotherhood protests that it is not doing business within the District of the United States District Court for the Eastern District of Pennsylvania, and is therefore not subject to the jurisdiction of the court.
It also asserts insufficiency of service of process for the reason that service (at the Board of Adjustment office at 15th and Locust Streets in Philadelphia) was not made at an office at which the Brotherhood regularly conducts business or upon a representative authorized by the Brotherhood to accept service on its behalf. Defendant insists that the Brotherhood conducts no regular business from the office mentioned, that the Pennsylvania Railroad System Board of Adjustment, of which J. C. McGuigan is an officer, is autonomous and independent of the Brotherhood, and that the Brotherhood has therefore not been served. Farnsworth & Chambers Co., Inc. v. Sheet Metal Workers, D.C.N.Mex. 1954, 125 F.Supp. 830; Isbrandtsen Co., Inc. v. National Marine Engineers' Beneficial Ass'n, D.C.S.D.N.Y.1949, 9 F.R.D. 541.
The affidavits in the present motion present virtually the same facts that were before Judge Sporkin in 1957. McGovern v. Brotherhood of Railway Clerks, Court of Common Pleas No. 2, Philadelphia County, September Term 1956, No. 3908 in Equity. After full consideration it was held that
"* * * Service upon the local lodge was sufficient service upon the Brotherhood, Spica v. I.L.G.W.U., 1957, 388 Pa. 382, 130 A.2d 468; Tunstall v. Brotherhood of Locomotive F. and E., 4 Cir., 1956, 148 F.2d 403; Operative Plasterers' and Cement Finishers' [International] Association [of U. S. and Canada] v. Case, 1937, 68 App.D.C. 43, 93 F.2d 56 as was service upon McGuigan, who, as Assistant vice-General Chairman of the System Board constituted such an official for service of process as was contemplated by Pa.R.C.P. 2157 [12 P.S.Appendix]. See Spica v. I.L.G.W.U., supra; Quinn v. Pershing, 1951, 367 Pa. 426 [80 A.2d 712]; Underwood v. Maloney, D.C.E.D.Pa.1953, 14 F.R. D. 222; Claycraft v. United Mine Workers of America, 6 Cir., 1953, 204 F.2d 600."
This Court takes the same view of the service of process, and the interrelation of the System Board and the Brotherhood, and rules that jurisdiction of the person of the defendant Brotherhood was properly obtained.

2. Is the Matter Res Adjudicata as to the Brotherhood?
The Brotherhood claims that the matter presented by the Complaint is
"res adjudicata, as to the Defendant Brotherhood, the matter having been fully litigated by the Court of Common Pleas No. 1 of Philadelphia County, December Term, 1953, No. 6298, affirmed [in part] on appeal by the Supreme Court of Pennsylvania at [348 Pa. 248] (1956) and certiorari denied by the Supreme Court of the United States [351 U.S. 985, 76 S.Ct. 1052, 100 L.Ed. 1498] wherein the claims respecting the questions raised in this case were dismissed."
*426 That controversy began when a new Philadelphia freight station, known as the Butler Street Station, was opened in 1953. Grand Lodge of the Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express and Station Employees v. Girard Lodge No. 100, 1956, 384 Pa. 248, 120 A.2d 523. Freight business theretofore handled at several stations of the Pennsylvania and other lines was diverted to Butler, with a resultant reduction of the number of available jobs.
Dissatisfaction as to the reallocation of work caused certain lodges of the Brotherhood to refuse to pay their per capita taxes to the Grand Lodge within the time prescribed by the latter's constitution and by laws. The Grand Lodge brought suit for forfeiture of the charters of those locals. The Supreme Court held that the lower court had erred in refusing to enforce the forfeiture, since it was expressly provided for by the contractual undertaking of the parties. Id., 384 Pa. 248, 268, 120 A.2d 523.
The opinion and record in that cause enable one to appreciate the undercurrents present in the instant acrimonious dispute. The questions there involved differ from those at hand, however, and the decision is deemed not res adjudicata for present purposes.

3. Laches and Statutes of Limitations
Both defendants point out that the plaintiffs allege that an agreement was reached in 1950 but did not file their complaint until 1959. They cite the Pennsylvania 6 year statute of limitations (Act of March 27, 1713, 1 Sm.L. 76, 12 P.S. § 31) as applicable at least by analogy, and Pennsylvania decisions. E. g. Madera v. Monongahela Railway Co., 1947, 356 Pa. 460, 52 A.2d 329.
The collective bargaining agreement, furthermore, provides limits of from 60 to 90 days on the submissions of claims. Railroad's Exhibit 1, Rule 7-B-1. They collect cases to the effect that time limits in contracts, including collective bargaining agreements, have frequently been enforced as reductions of the statutory period for bringing contract actions. Povey v. Midvale Company, 1954, 175 Pa.Super. 395, 105 A.2d 172, certiorari denied 1954, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 689.
It is recognized that these defenses would prove formidable were the complaint otherwise supportable. In view of the allegations of discrimination and fraud, however, and assertions of the right to injunctive relief against continuing breaches of contract and of trust, this Court is not inclined to make summary disposition of the complaint on that short ground.

4. Jurisdictional Amount Involved; Lack of Diversity of Citizenship; Not a Proper Class Action
These several jurisdictional objections, presented by defendants in different aspects, are based on the proposition that plaintiffs have failed to establish federal-question jurisdiction. Lacking such basis, there is not the diversity of citizenship required under 28 U.S.C.A. § 1332, since the complaint recites that one plaintiff resides in Pennsylvania, as does the defendant Railroad. This Court agrees that a federal question would be required in order to confer jurisdiction.
So far as it goes, the next proposition is doubtless correct. Defendants say that the fact that plaintiffs purport to bring a class action for a total of close to two million dollars is immaterial because separate and distinct demands cannot be aggregated to make up the jurisdictional amount. Hughes v. Encyclopaedia Brittanica, 7 Cir., 1952, 199 F.2d 295. The argument, however, goes only to the monetary claims, and disregards the claims for injunctive relief. Dismissal, therefore, cannot be granted on that score.
The third point is that this is not a proper class action. In the absence of a federal question, it is said to be a contract action, of the type known as the spurious class action. In such, plaintiffs represent only themselves and others who actually intervene. Knudsen v. *427 Chicago & Northwestern Railway Co., D.C.N.D.Ill.1952, 106 F.Supp. 48; 3 Moore's Federal Practice, Par. 23.10 (2d Ed., 1948).
Were the complaint otherwise good, this point would deserve serious consideration. As will be seen, the regulations of the Brotherhood are properly before the Court on these motions. The Constitution and the Obligation of this union prohibit any resort to judicial proceeding until after exhaustion of internal remedies. Sec. 2(b), Article 5, Const. The Obligation, appearing at page 13 of the Ritual, provides (at pages 14-15)
"I further promise and declare that I will not under any circumstances resort to or bring suit in any court or courts either Federal, State or Provincial until after I have exhausted all my rights and used all means at my command within and under the laws of the Brotherhood.
"I further declare that should I from any cause leave this Order my obligation shall remain binding and in full force."
It would be speculative, indeed, to resolve these motions on the assumptions which would be necessary in order to make decisive the objections here discussed. On the other hand, it seems a strong assumption for any court to conclude that the present action automatically joins the 600 members, more or less, of the alleged class in seeming disregard of the undertakings of membership.
To reach the heart of the present matter, however, it seems necessary to determine whether or not this complaint shows that an agreement was ever made.

5. Was the Alleged Agreement ever Reached?
The complaint alleges that an agreement was reached on August 1, 1951. Elsewhere, however, it seems to say that the Brotherhood should have entered into an agreement, and breached its duty in that respect. (Complaint, Par. VIII and cf. XVIII and XIX.) Paragraph VIII speaks of an agreement as "consummated" on August 1, 1951, and confirmed by letter which was attached as Exhibit "A."
That Exhibit, reproduced verbatim, reads as follows:
 Plaintiff's Exhibit "A"
"Brotherhood of Railway and Steamship
 Clerks, Freight Handlers, Express
 & Station Employees
 Affiliated with American
 Federation of Labor
S. V. W. Loehr, G. R. Kershaw
General Chairman Senior Vice General
 Chairman
A. B. Seward,
General Secretary G. M. Hill
Treasurer Vice General
 Chairman
 M. C. Renkenberger
 Vice General
 Chairman
Pennsylvania Railroad System Board of
 Adjustment
1214-16 Clark Bldg., 717 Libert Ave.,
 Pittsburgh 22, Pa.
 "File 4.114 Eastern Region
 Subject: Piecework on Tonnage
 Rates of Pay
 Philadelphia Transfer
 "April 21, 1950
"Mr. W. L. Nancarrow,
General Manager, Eastern Division
Pennsylvania Railroad Company
409 Pennsylvania 30th Street Station
Philadelphia 4, Pennsylvania
"Dear Sir:
"This refers to your letter of April 7, 1950 which is in connection with our letter of January 21, 1949 filing formal notice in accordance with the procedures of the Railway Labor Act and our initial meeting held on February 15, 1949 with respect to our desire to abrogate the agreement of July 29, 1941 with respect to tonnage rates of pay applicable to certain positions at Philadelphia Transfer, Philadelphia Terminal Division, and to substitute in lieu thereof a new agreement to be effective as of March 1, 1949.
*428 "We quote from your letter:
"`We have given very careful consideration to your proposal in this matter; and, in view of the pronounced decrease in the total amount of tonnage handled, and because of the changed present day conditions, at the Philadelphia Transfer, we are of the opinion that it would be of mutual benefit to both Management and the Employees if the tonnage rates were eliminated entirely at this location.'
"In accordance with our discussion at our meeting in Philadelphia, Pennsylvania on April 18, 1950 we are agreeable to your suggestion. This is based on our understanding that the rate of pay for tallymen in the Eastern Region will be changed to the same rate of pay that is in effect in the Central Region, that is $269.17 a month, and further, that the same considerations attendant to such monthly rated employees in the Central Region will be granted these employees. We suggest that this entire arrangement be made effective as of May 1, 1950.
"Will you please advise if concur.
 "Yours truly,
 /s/ S. V. W. Loehr
 General Chairman
"Blind copy to:
 Mr. Geo. M. Harrison, G.P.
 Members Executive Committee
 Mr. J. C. McGuigan, A.G.C.
 Mr. J. P. Zawada, D.C.
 Mr. E. L. Livingston, Pres. No. 6319
 Brother Zawada's letter of April 19,
 1950 refers. S.V.W.L.
"Above letter found at X 162-163 of original record C.P. No. 1, Dec. Term 1953, No. 6298."
One recalls that the Complaint (Par. VIII) recites that
"* * * on August 1, 1951 an agreement was consummated by Mr. Loehr on behalf of the plaintiffs and Mr. Stewart, Superintendent of Stations and Transfer on behalf of the Pennsylvania Railroad * * *"
whereby Eastern Division tallymen were to get pay and fringe benefits equalling those prevailing on the Central Region.
"* * * The understanding between the Brotherhood and the carrier was reduced to writing as was the custom in like matters by a letter * * * confirming * * * attached hereto and marked Exhibit `A.'"
The "confirming" letter clearly shows a date of April 21, 1950. How a letter of that date could confirm an agreement of August 1, 1951, is not explained. To the contrary, plaintiffs' brief in reply to the Railroad's Motion seems to concede that there was no agreement.
Plaintiffs therein quote at length from a case cited by the Railroad, Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239 at pages 242-243, 70 S.Ct. 577, 94 L.Ed. 795. They then say:
"Thus, we can see that under this decision the Adjustment Board has jurisdiction to settle a dispute which involves the interpretation or application of an existing agreement, or disputes involving the making of collective agreements.
"Do we have an existing agreement within the meaning of the Slocum Case, supra? Obviously not. The carrier and the Brotherhood are still operating under the old agreement, the terms of which were illegally changed. The terms of the new agreement are only partially in force. We are between two agreements!"
No unfairness to plaintiffs is intended by excerpting from context the statement that "we are between two agreements." It does seem reasonable to conclude, however, that if the complaint discloses a "new" agreement, it is simply an amendment of the old one.
However that may be, the complaint must govern here, and the exhibit pleaded as stating the agreement must control. And that letter, Exhibit "A", inescapably reveals itself as a mere offer or, possibly, a counter offer.
*429 Insofar as the exhibited letter purports to quote in turn from a letter written by the Railroad on April 7, 1950, no support for the agreement theory appears. In the first place, the quotation does not bind the Railroad, even if one assume from the pleadings that there was no disclaimer by the addressee. A. B. Leach & Co. v. Peirson, 1927, 275 U.S. 120, 48 S.Ct. 57, 72 L.Ed. 194. Furthermore, it simply expresses favor toward elimination of tonnage rates.
The letter itself, which is designated as a "confirmation," connotes an offer or counteroffer in its next to last paragraph by the passage commencing "This is based on our understanding * * *." At least, lack of prior oral agreement as to terms is implicit in the sentence "We suggest that this entire arrangement be made effective as of May 1, 1950."
The final sentence, which clearly asks whether the offer is acceptable, is deemed controlling as to the absence of prior agreement, i. e. "Will you please advise if you concur."
It seems patent that the requirements for the formation of an informal, bilateral contract were not met by the showing made on the complaint and exhibit, and it is so ruled. Restatement of Contracts, Secs. 19 and 22. The letter is found to fit the definition of an offer a manifestation of intent. Restatement of Contracts, Sec. 24; cf. Cohen v. Johnson, D.C.M.D.Pa.1950, 91 F.Supp. 231.

6. Jurisdiction over the Subject Matter; Failure to State a Claim for which Relief Can be Granted
In the light of the foregoing ruling, it seems appropriate to discuss these major objections simultaneously.

A. Remedies under the Railway Labor Act are Exclusive.
Plaintiffs claimed jurisdiction here under the Act (45 U.S.C.A. § 151 et seq.). Agreement or no, however, the United States Supreme Court in recent decisions has gone to some pains to make clear that the remedies under the Act are exclusive. Pennsylvania R. Co. v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422; Union Pacific R. Co. v. Price, 1959, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460.
It seems entirely clear in the cases that the Act itself is designed to settle disputes or grievances arising "out of the interpretation or application of agreements concerning rates of pay." 45 U.S.C.A. § 153, subd. 1(i). Cases to the effect that "the jurisdiction of the Board to adjust grievances and disputes of the type covered by the Act is exclusive" are collected in Gunther v. San Diego & Arizona Eastern Railway Co., D.C.S.D.Calif.1958, 161 F.Supp. 295, 297. Thus, even had there been an agreement as to pay equalization, it does not follow that this court would have had jurisdiction.
Lurking in plaintiffs' complaint is an alternate suggestion that the Brotherhood should have entered into an agreement, and breached its duty in that respect. Cf. Complaint, paragraphs XVIII and XIX. The procedures suggested by paragraph XIwhether to enforce or to negotiate an agreementare not matters to be policed by a federal Court. That is, it is not for this Court to compel mediations under Sec. 5(first) (a, b) of the Act (45 U.S.C.A. § 155); to instigate recourse to a presidential fact-finding board; and much less to find fault with the Brotherhood for failing to seek a strike ballot (Cf. par. XI).
To the extent that collusion between the Brotherhood and Railroad is suggested (e.g. par. XIII), the result is the same. Plaintiffs bottom their cause on the existence of the collective bargaining agreement of May 1, 1942 (Par. VI), and seem to be in the position of the plaintiffs in Bennett v. Progress Lodge 992, Brotherhood of Railway and Steamship Clerks, Etc. and The B. and M. Railroad, D.C.Mass.1958, 159 F.Supp. 93, 94.
In that case the complaint based jurisdiction on the Act (inter alia) and alleged that the plaintiffs were wrongfully discharged or denied employment *430 and, as a result of collusion between the Brotherhood and Railroad, were denied a hearing before either. A motion to dismiss for lack of jurisdiction over the subject matter was granted for the reason that:
"All the claims advanced by these plaintiffs * * * involve a reading of the collective bargaining agreement and consequently are within the sole jurisdiction of the Railroad Adjustment Board."

B. Allegations of Fraud and Collusion
Since the case last mentioned raised that very issue, it is appropriate here to mention that in addition to the averments of the complaint, the plaintiffs' briefs are replete with charges that go far out beyond those found in the complaint. On these motions, however, all that may be considered are the complaint, exhibit, and amendment, plus affidavits and exhibits as to matters inherent in the averments properly stated in the complaint. Fagan v. Pennsylvania Railroad Company, D.C.M.D.Pa. 1959, 173 F.Supp. 465, 469.
Facts well pleaded in the complaint are assumed to be true. Creswell-Keith, Inc. v. Willingham, 8 Cir., 1959, 264 F.2d 76. It is fully recognized that dismissals without a hearing on the merits are not favored. Tuolumne Gold Dredging Corp. v. Walter W. Johnson Co., D.C.N.D.Calif.1945, 61 F.Supp. 62. Acts of fraud not particularized in the complaint, however, cannot be considered. Carrigan v. California State Legislature, 9 Cir., 1959, 263 F.2d 560, certiorari denied 359 U.S. 980, 79 S.Ct. 901, 3 L.Ed.2d 929.

C. Discrimination as Basis of Federal Jurisdiction
It is plaintiffs' position that the alleged discrimination gives a basis for direct recourse to the federal court. In that connection, it is necessary to examine some of the so-called discrimination cases. A leading case, which reviews the authorities, is Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. Plaintiffs there had alleged that the railroad had purported to abolish 45 jobs held by the petitioners and other Negroes and fill the jobs with whites. They alleged the failure of their union, the designated bargaining agent, to represent them without discrimination in protection of their employment and seniority rights under the contract between the union and the railroad. Holding that it was error for the court below to dismiss for want of jurisdiction, the Supreme Court said at the outset (355 U.S. at page 42, 78 S.Ct. at page 100):
"Once again Negro employees are here under the Railway Labor Act asking that their collective bargaining agent be compelled to represent them fairly. In a series of cases beginning with Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, this Court has emphatically and repeatedly ruled that an exclusive bargaining agent under the Railway Labor Act is obligated to represent all employees in the bargaining unit fairly and without discrimination because of race and has held that the courts have power to protect employeees against such invidious discrimination [collecting cases]."
Those discrimination cases invariably involve racial discrimination, and are deemed not in point in the instant case. An exception, not heretofore cited, is Mount v. Grand International Brotherhood of Locomotive Engineers, 6 Cir., 1955, 226 F.2d 604. There the plaintiffs were held entitled to a hearing on the merits upon their showing that the labor union had given notice that it was on the point of negotiating with the railroad an amendment to the collective agreement in direct defiance of the repeated adjudications of union tribunals at various appellate levels.
The discrimination cases seem to be of two classes: a larger group which concerns racial discriminationthen a much smaller category comprising instances of arbitrary and capricious action within a union, in defiance of that *431 union's own internal procedures. An overt, hostile and invidious discrimination must be demonstrated in order to raise such ground. None of those cases gives color to the assertion that there is a federal question presented by the instant complaint. For that matter, paragraph XVII of the complaint itself concedes that in the absence of the purported agreement of 1951 the Railroad is legally entitled to maintain a differing wage rate for tallymen in different geographic locations.

D. Allegations of Facts Themselves Inconsistent with Facts Essential to Recovery
Before consideration of other grounds of objection, the hornbook rule is recognized that a complaint must be dismissed where it contains admissions or allegations which themselves are inconsistent with facts essential to recovery. This salutary rule is designed to prevent the courts and litigants from being subjected to the inconvenience and expense of patently defective actions. It may well be applied to the present complaint in a number of instances.
As an example, one sees that the complaint states an agreement, and yet the supporting exhibit shows itself, by its date as well as its own language, to be an offer or attempt at negotiation.
The complaint bases jurisdiction in this court on the Act, yet tacitly confesses that it seeks to avoid or bypass that Act by allegations of discrimination.
Further inconsistencies have been seen and will appear. Suffice it to say that the objections of defendants on this score are upheld.

E. Failure to Show Exhaustion of Administrative or Contractual Remedies
It has been ruled above that the remedies under the Act are exclusive, and that plaintiffs clearly have not followed them, and that compliance with such procedures are prerequisite. 45 U.S.C.A. § 153, First(i); Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795.
Apart from the Act, however, there is the procedure of the collective bargaining agreement and the internal procedure of the Brotherhood. That agreement and those regulations are before this court. The complaint has stated the existence of the collective bargaining agreement, and named the Brotherhood as the duly authorized bargaining agent for these plaintiffs. The defendant Brotherhood therefore quite properly incorporated in its motion the Constitution of the Grand Lodge and the By-Laws of the Pennsylvania Railroad System Board of Adjustment of the Brotherhood. Fagan v. Pennsylvania Railroad Company, D.C.M.D.Pa.1959, 173 F.Supp. 465. Those exhibits disclose a system of remedies for redressing any wrong which a member may suffer.
The rights and duties of that constitution and by-laws have been held to be fair and in compliance with fundamental justice and due process in three recent cases decided in Pennsylvania. Grand Lodge of the Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express and Station Employees v. Girard Lodge, No. 100, 1956, 384 Pa. 248, 120 A.2d 523; McGovern v. Brotherhood of Railway Clerks, Court of Common Pleas No. 2, Philadelphia County, September Term, 1956, No. 3908; Fagan v. Pennsylvania Railroad Company, D.C. M.D.Pa.1959, 173 F.Supp. 465, 469.
It is true that plaintiffs allege that they
"* * * have no remedy within the Brotherhood since this complaint against the Pennsylvania Railroad Company has gone unheeded by all echelons of the Brotherhood since 1951."
That statement (Par. XV), otherwise unsupported, gives no indication that the internal procedure has been followed. Since that procedure has recently been analyzed in the opinion of *432 Judge Follmer in the Fagan case, heretofore cited, to go over the entire ground seems unnecessary. See Fagan v. Pennsylvania Railroad Company, D.C.M.D. Pa.1959, 173 F.Supp. 465. It is patent that plaintiffs have failed to exhaust their administrative remedies within the Brotherhood and under their collective bargaining agreement, which is prerequisite to judicial relief. Trainer v. International Alliance of Theatrical Stage Employees, 1946, 353 Pa. 487, 46 A.2d 463; cf. Underwood v. Maloney, D.C. E.D.Pa.1957, 152 F.Supp. 648, 658. Thus, quite apart from jurisdiction under the Act, the plaintiffs have failed to make a proper showing to entitle them to relief.
For the foregoing reasons the motions to dismiss made by the defendant Brotherhood and the defendant Railroad are in each case granted and it is accordingly ordered that the complaint in this cause filed by James A. Gainey and J. L. Young et al. be and the same is hereby dismissed.