CINCINNATI TYPOGRAPHICAL UNION NO. 3, LOCAL 14519, COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff,

v.

GANNETT SATELLITE INFORMATION NETWORK, INC., d/b/a the Cincinnati Enquirer, Defendant.

No. C–1–91–259.

United States District Court, S.D. Ohio, W.D.

Sept. 30, 1992.

Robert Irvin Doggett, Doggett & McEvilley–1, Cincinnati, OH, for Local 14519 Cincinnati Typographical Union # 3, Local 14519, Communications Workers of America, AFL–CIO.

Thomas Allen Brennan, Graydon, Head & Ritchey–1, Cincinnati, OH, for Gannett Satellite Information Network Inc.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Motion for Summary Judgment filed by Plaintiff (doc. no. 9), Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (treated as a Motion for Summary Judgment) (doc. no. 4), all supporting and opposing pleadings, and the Highlighted Findings of Fact and Conclusions of Law. (doc. nos. 15 and 16). Memoranda in opposition to and in support of such Motions have been filed by the parties (doc. nos. 10, 11, 12, 13).

Plaintiff Cincinnati Typographical Union No. 3, Local 14519 Communications Workers of America, AFL–CIO, a labor organization, brings this action against Defendant, Gannett Satellite Information Network, Inc., for breach of contract, and for refusal to arbitrate a dispute.

### FINDINGS OF FACT

1. Defendant Gannett Satellite Information Network ("Employer") publishes a daily newspaper known as the *Cincinnati Enquirer*. The Employer also performs the production work for another daily newspaper known as the *Cincinnati Post*.

2. Plaintiff Cincinnati Typographical Union No. 3, Local 14519 ("Union") is a labor organization that is the exclusive bargaining representative for the composing room employees employed by the Employer.

3. The Union and Employer have been parties to numerous collective bargaining agreements covering the composing room employees.

4. In 1981, the parties entered into the "Contract Cincinnati Enquirer and Cincinnati Typographical Union No. 3," a collective bargaining agreement.

5. Until reproduction is set it is known as being "on the hook."

6. One of the reproduction provisions of the collective bargaining agreement dated March 1, 1981 through February 29, 1984, authorized a practice under which printers collected "on the hook" advertising copy. They were able to re-set advertising copy which came in from advertisers pre-set during their regular work hours, if they had nothing else to do. Section 34 provides, in pertinent part, that employees who held situations on February 28, 1982, "may not be laid off so long as reproduction is on the hook." A situation is a full-time five day a week job in the composing room.

7. On December 28, 1990, the Employer laid off composing room employees Joseph Kemble, Robert Kelly and Kenneth Wolf. On February 21, 1991, the Employer laid off composing room employee Donald Bishop. Kemble, Kelly, Wolf and Bishop each held situations as of February 28, 1982.

8. The Union filed grievances over the layoffs of Kemble, Kelly, Wolf and Bishop. In these grievances, the Union alleged that these four employees were improperly laid off because, at the time of the layoffs, there was reproduction "on the hook."

9. The Joint Standing Board met on the Union's grievance over the layoff of Kemble, Kelly and Wolf. The Joint Standing Board could not resolve the grievance and thus the Union demanded arbitration. On the Bishop layoff grievance, the Union offered to forego the Joint Standing Board and refer the matter directly to arbitration in light of the parties' positions at the earlier Joint Standing Board.

10. Section 1 of the 1981 agreement contained a provisional expiration date of February 29, 1984. This 1984 date was merely provisional, because section 1 of the 1981 agreement also said that if either party to the contract gave the other party notice, within 120 days before February 29, 1984, that that party "desire[d] to amend any or all of [the 1981 agreement's] provisions," the 1981 contract would remain open "until it is supplanted by another or until other action is authorized by either of the signatories."

11. The agreement was extended to August 20, 1987. The parties bargained in an effort to reach a new agreement, but the existing agreement was not extended past August 20, 1987.

12. The 1981 collective bargaining agreement terminated by its terms on October 12, 1987.

13. During bargaining, the Employer sought concessions from the Union, and the parties had agreed on some points. One proposal the Employer made was to eliminate the practice which had been authorized in the 1981 agreement, under which the printers collected "on the hook" advertising copy.

14. The parties have not executed another collective bargaining agreement after the 1981 agreement. The Employer has no currently effective collective bargaining agreement with the Union.

15. On October 12, 1987, the Employer posted unilaterally-implemented new terms and conditions of employment.

16. The unilaterally-imposed terms and conditions of employment posted on October 12, 1987 contain no arbitration clause and contain no "on-the-hook" clause.

17. The Employer has refused to arbitrate the Union's two disputes.

18. On November 12, 1987 and December 4, 1987, the union filed unfair labor practice charges against the Employer with the National Labor Relations Board, contesting, among other acts, the Employer's posting of conditions.

19. On January 7, 1988, the Regional Director of the National Labor Relations Board's Region 9 issued a decision on the union's charges, finding for the Employer, and deciding not to issue a complaint. The union then appealed the Regional Director's decision. On January 22, 1988, the General Counsel of the National Labor Relations Board acknowledged the union's appeal. On May 25, 1988, the General Counsel affirmed the Regional Director's decision not to issue a complaint.

20. The Regional Director of the National Labor Relations Board's Region 9 made fact findings, affirmed by the NLRB General Counsel, finding that: As of October 12, 1987, a bargaining impasse existed between the parties, and the Employer then lawfully posted unilaterally-implemented new conditions of employment.

21. The parties have not executed another collective bargaining agreement after the 1981 agreement.

## CONCLUSIONS OF LAW

1. The Court has reviewed the arguments made by the parties and applied the principles of controlling law to the facts presented. The legal standard for consideration and disposition of issues on Summary Judgment is well settled.

2. Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), see Fed.R.Civ.P. 56(c). The evidence presented on a motion for Summary Judgment is construed in the light most favorable to the non-moving party who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (original emphasis).

3. Summary Judgment should not be granted unless it is clear that a trial is not necessary. The threshold inquiry to determine whether there is a need for a trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

4. The fact that the weight of the evidence favors the moving party does not authorize a court to grant Summary Judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 490, 7

L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

5. Plaintiff argues that this Court should compel the Employer to arbitrate the Plaintiff's two grievances because the subject of the grievances involve an accrued and vested right arising out of the CBA. Plaintiff does not contest that impasse occurred prior to Defendant's unilateral, posted working condition changes which omitted the "on-the-hook" provisions from the 1981 CBA.

6. An employer may unilaterally impose changes in the terms and conditions of employment after the parties have reached a genuine impasse in negotiations. *N.L.R.B. v. H & H Pretzel Co.*, 831 F.2d 650, 656 (6th Cir.1987). The Supreme Court stated that an employer may unilaterally change the terms and conditions of employment after impasse had occurred if the changes were reasonably comprehended in the terms of its contract offers to the union. *N.L.R.B. v. Crompton–Highland Mills, Inc.*, 337 U.S. 217, 223–25, 69 S.Ct. 960, 963–64, 93 L.Ed. 1320 (1949); *Cuyamaca Meats, Inc. v. Pension Fund*, 827 F.2d 491, 496 (9th Cir.1987).

8. When the parties reach an impasse, the employer's statutory duty to maintain the status quo during the postcontract negotiations ends. *Laborers Health & Welfare Tr. v. Adv. Light. Con.*, 484 U.S. 539, 544, n. 5, 108 S.Ct. 830, 833 n. 5, 98 L.Ed.2d 936 (1988); *American Ship Building Co. v. NLRB*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). The General Council of the NLRB confirmed that impasse in collective bargaining negotiations occurred between Plaintiff and Defendant, that the posted unilaterally-implemented new conditions of employment were subsequent to the parties' impasse, such new conditions were law-

fully implemented and did not constitute an unfair labor practice.

9. After bargaining to an impasse, that is, after good-faith negotiations have exhausted the prospects of concluding an agreement, an employer does not violate the act by making unilateral changes that are reasonably comprehended within the preimpasse proposals. *American Federation of Television & Radio Artists v. NLRB*, 395 F.2d 622 (D.C.Cir.1968). If an employer and a union bargain in good faith over a mandatory subject but reach an impasse during their negotiations, the employer may then implement its proposal unilaterally without the union's consent. *Trustees of Col. Pipe Indus. Pension Trust v. Howard Elec. & Mechanical, Inc.*, 909 F.2d 1379, 1384 (10th Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991).

10. A collective bargaining agreement does not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract beyond its life, when it has been terminated in accordance with its provisions. *Elder v. New York Cent. R. Co.*, 152 F.2d 361 (6th Cir. 1945).

11. The Employer is not required to arbitrate a grievance regarding a layoff that arose out of a provision from a terminated CBA when a unilateral change lawfully made in the newly-posted terms and conditions of employment did not provide for arbitration for such a layoff.

12. When an employer legally implements and posts proper terms and conditions of employment over which it has reached a legitimate impasse in bargaining, these terms and conditions of employment become the operative terms and conditions of employment in the bargaining unit, and supersede and replace the provisions in any prior terminated collective bargaining agreement.

13. The defendant did not breach any contract nor did it agree to submit the grievances regarding the layoffs in question to arbitration.

## CONCLUSION

14. The Plaintiff's Motion for Summary Judgment is **DENIED,** and the Defendant's Motion for Summary Judgment is hereby **GRANTED.**

15. The case is **DISMISSED WITH PREJUDICE** and terminated from the docket of this Court at Plaintiff's cost.

**IT IS SO ORDERED.**